1   ROB BONTA, State Bar No. 202668
    Attorney General of California
2   JOANNA B. HOOD, State Bar No. 264078
    Supervising Deputy Attorney General
3   BRIAN LEE, State Bar No. 253592
    Deputy Attorney General
4       300 So. Spring Street, Suite 1702
        Los Angeles, CA  90013
5       Telephone:  (213) 269-6621
        Facsimile:  (916) 761-3641
6       E-mail: Brian.Lee@doj.ca.gov
    *Attorneys for Defendants*
7   *A. Sands, F. Crosby, J. Thurmon, M. Alvarez,*
    *and S. Norman*
8

9                   IN THE UNITED STATES DISTRICT COURT

10                  FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12  |                                         | Case No.                                      |
13  | **JAQUES O. FEARENCE,**                  | (Solano County Superior Court,                |
                                              | Case No. CU24-06184)                          |
14  |                          Plaintiff,      |                                               |
    |                                          | **NOTICE OF REMOVAL OF ACTION**               |
15  |              v.                          | **UNDER 28 U.S.C. § 1441(a) (FEDERAL**        |
    |                                          | **QUESTION) AND REQUEST FOR**                 |
16  | **CDCR, et al.,**                        | **SCREENING OF COMPLAINT**                    |
                                              | **UNDER 28 U.S.C. § 1915A**                   |
17  |                          Defendants.     |                                               |

18

19      **TO THE CLERK OF THE COURT**:

20      **PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1331, 1441, and 1446,

21  Defendants A. Sands, F. Crosby, J. Thurmon, M. Alvarez, and S. Norman[1] hereby remove this

22  action from the Superior Court of California, County of Solano, to the United States District

23  Court for the Eastern District of California on the grounds that the case and controversy at issue

24  involves Federal questions under the First, Fifth, and Fourteenth Amendments as well as the

25  Americans with Disabilities Act (42 U.S.C. § 12101).

26  //

27      _____

28      [1] As of the date of this filing, it is counsel for Defendants' understanding that CDCR and
    T. Vang, who were also named as Defendants in Plaintiff's Complaint, have not been served and
    they are not appearing by this pleading.

                                         1

**THE REMOVED ACTION**

1.   On August 16, 2024, the removed civil action entitled *Jaques O. Fearence v. CDCR, et al.,* Case No. CU24-06184, was commenced in the Superior Court of California, County of Solano.  A copy of the Complaint is attached hereto as Exhibit A.

2.   On August 16, 2024, the Summons was issued by the Superior Court.

**REMOVAL IS TIMELY**

3.   Service of the Complaint was accepted on behalf of Defendants by persons authorized to accept such service on November 20, 2024.

4.   Because the Complaint was served on November 20, 2024, removal is timely under 28 U.S.C. § 1446(b)(1).

**GROUNDS FOR REMOVAL: FEDERAL QUESTION**

5.   This Court has original jurisdiction over this action because it arises, in part, under the Constitution and the laws of the United States. 28 U.S.C. § 1331.  Specifically, Plaintiff claims that Defendants engaged in "discrimination based on race, disability, and failure to treat plaintiff equally" (second cause of action) under the First, Fifth, and Fourteenth Amendments of the United States Constitution, as well as the Americans with Disabilities Act.  Plaintiff also alleges violations of his rights under California law.

**VENUE ASSIGNMENT**

6.   Venue is proper in the Eastern District of California because it is the district embracing the Superior Court of California, County of Solano, in which the removed action is pending. 28 U.S.C. § 1441(a).[2]

**PAPERS FROM REMOVED ACTION**

7.   In accordance with 28 U.S.C. § 1446(a), a copy of the Summons and Complaint, the only pleading served on Defendants in the removed action is attached hereto as Exhibit A.

//

//

---
[2] Plaintiff's civil rights allegations arise from his incarceration at California Medical Facility located in Vacaville, California.

**REQUEST FOR SCREENING AND EXTENSION OF TIME
TO FILE A RESPONSE TO THE COMPLAINT**

8.      Defendants request that the Court screen the Complaint under 28 U.S.C. § 1915A and dismiss the Complaint or some portion of it if Plaintiff has raised claims that are legally "frivolous or malicious," fail to state a claim upon which relief may be granted, or seek monetary relief from a Defendants who are immune from such relief. 28 U.S.C. §§ 1915A(b), 1915(e)(2).

9.      Defendants also request thirty days to respond to the Complaint from the date of service of the screening order.

**NOTICE TO ADVERSE PARTY AND STATE COURT**

10.     In accordance with 28 U.S.C. §1446(d), Defendants will promptly provide written notice of removal to all adverse parties[3] and will promptly file a copy of the Notice of Removal with the Clerk of the Superior Court of California, County of Solano.

**NON-WAIVER OF DEFENSES**

11.     By removing this case to the District Court, Defendants do not waive any available defenses or challenges to the Complaint that are available to Defendants nor do Defendants admit the allegations made in the Plaintiff's State-court Complaint.

Dated:  December 19, 2024                     Respectfully submitted,

ROB BONTA
Attorney General of California
JOANNA B. HOOD
Supervising Deputy Attorney General

*/s/ BRIAN LEE*

BRIAN LEE
Deputy Attorney General
*Attorneys for Defendants A. Sands, F.
Crosby, J. Thurmon, M. Alvarez and S.
Norman*

SA2024305512
67292227_2

_____

[3] According to CDCR's inmate locator,
https://ciris.mt.cdcr.ca.gov/details?cdcrNumber=V51385 (last visited 12/16/24), Plaintiff is now incarcerated at High Desert State Prison located in Susanville, California.



**EXHIBIT A**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:** CDCR; ~~REDD~~, S. NORMAN, M. ALVAREZ,
**(AVISO AL DEMANDADO):** F. CROSBY, T. VANG, J. THURMON, AND
A. SANDS.

**YOU ARE BEING SUED BY PLAINTIFF:** JAQUES O. FEARENCE
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: SOLANO COUNTY COURTHOUSE | CASE NUMBER: (Número del Caso): |
|---|---|
| (El nombre y dirección de la corte es): ~~GOLDEN GATE~~ | **CU24-06184** |

580 TEXAS ST, FAIRFIELD, CA 94533

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: PLAINTIFF IN PRO SE
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
JAQUES O. FEARENCE, CMF, P.O. BOX-2500, VACAVILLE, CA, 95696.

| DATE: 7/9/2024 AUG 16 2024 | Clerk, by *signature* | , Deputy |
|---|---|---|
| (Fecha) | (Secretario) | (Adjunto) |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

[SEAL]
**NOTICE TO THE PERSON SERVED:** You are served
1. ☒ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):
3. ☐ on behalf of (specify):
   under: ☐ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
   ☐ other (specify):
4. ☒ by personal delivery on (date):

**ASSIGNED TO**
**JUDGE** CHRISTINE CARRINGER
**FOR ALL PURPOSES**

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

For your protection and privacy, please press the Clear This Form button after you have printed the form.

[ Print this form ]   [ Save this form ]   [ Clear this form ]

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** STATE BAR NUMBER: N/A <br> NAME: JAQUES OMAR FEARENCE - V51385 <br> FIRM NAME: <br> STREET ADDRESS: CMF, P.O. BOX-2500 <br> CITY: VACAVILLE STATE: CA ZIP CODE: 95696 <br> TELEPHONE NO.: N/A FAX NO.: N/A <br> EMAIL ADDRESS: N/A <br> ATTORNEY FOR (name): IN PRO SE | **FOR COURT USE ONLY** <br><br> **FILED** <br> Clerk of the Superior Court <br><br> AUG 16 2024 <br><br> By [signature] <br> DEPUTY CLERK |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** SOLANO
STREET ADDRESS: 580 TEXAS ST.
MAILING ADDRESS
CITY AND ZIP CODE: FAIRFIELD, CA 94533
BRANCH NAME: CIVIL DIVISION

PLAINTIFF: JAQUES O. FEARENCE

DEFENDANT: CDCR; S. NORMAN, M. ALVAREZ, F. CROSBY, T.
☐ DOES 1 TO 8 VANG, J. THURMON, AND A. SANDS.

$435 FW [illegible]

**COMPLAINT—Personal Injury, Property Damage, Wrongful Death**

☐ **AMENDED** *(Number):*

**Type** *(check all that apply):*
☐ **MOTOR VEHICLE** ☒ **OTHER** *(specify):* TOM BANE CIVIL
☐ Property Damage ☐ Wrongful Death RIGHTS SUIT
☐ Personal Injury ☒ Other Damages *(specify):* PUNITIVE

CASE NUMBER:

**C U 2 4 - 0 6 1 8 4**

**Jurisdiction** *(check all that apply):*
☐ **ACTION IS A LIMITED CIVIL CASE** (does not exceed $35,000)
Amount demanded ☐ does not exceed $10,000
☐ exceeds $10,000
☒ **ACTION IS AN UNLIMITED CIVIL CASE** (exceeds $35,000)
☐ **ACTION IS RECLASSIFIED** by this amended complaint
☐ from limited to unlimited
☐ from unlimited to limited

**ASSIGNED TO**
**JUDGE** CHRISTINE CARRINGER
**FOR ALL PURPOSES**

1. Plaintiff *(name or names):* JAQUES OMAR FEARENCE
   alleges causes of action against defendant *(name or names):* CDCR; S. NORMAN, M. ALVAREZ, F. CROSBY, T. VANG, J. THURMON, AND A. SANDS. VIOLATION OF TOM BANE CIVIL RIGHTS SUIT.

2. This pleading, including attachments and exhibits, consists of the following number of pages: ABOUT/AROUND 59 PAGES.

3. Each plaintiff named above is a competent adult YES.
   a. ☐ except plaintiff *(name):*
      (1) ☐ a corporation qualified to do business in California.
      (2) ☐ an unincorporated entity *(describe):*
      (3) ☐ a public entity *(describe):*
      (4) ☐ a minor ☐ an adult
         (a) ☐ for whom a guardian or conservator of the estate or a guardian ad litem has been appointed.
         (b) ☐ other *(specify):*
      (5) ☐ other *(specify):*
   b. ☐ except plaintiff *(name):*
      (1) ☐ a corporation qualified to do business in California.
      (2) ☐ an unincorporated entity *(describe):*
      (3) ☐ a public entity *(describe):*
      (4) ☐ a minor ☐ an adult
         (a) ☐ for whom a guardian or conservator of the estate or a guardian ad litem has been appointed.
         (b) ☐ other *(specify):*
      (5) ☐ other *(specify):*

☐ Information about additional plaintiffs who are not competent adults is shown in Attachment 3.

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001 [Rev. January 1, 2024]

**COMPLAINT—Personal Injury, Property
Damage, Wrongful Death**

Code of Civil Procedure, § 425.12
www.courts.ca.gov

RECEIVED
SOLANO SUPERIOR COURT

2024 AUG 16    10: 21

BY

RECEIVED
SOLANO SUPERIOR COURT

2024 AUG 16 : A 10: 40

DEPUTY CLERK

| SHORT TITLE: FEARENCE VS. CDCR; NORMAN, ALVAREZ, CROSBY, YANG, THURMON, AND SANDS. | CASE NUMBER: |
|---|---|

4. ☒ Plaintiff *(name):* JACQUES OMAR FEARENCE
   is doing business under the fictitious name *(specify):* N/A

   and has complied with the fictitious business name laws.
5. Each defendant named above is a natural person

   N/A

   a. ☐ except defendant *(name):* N/A
   - (1) ☐ a business organization, form unknown.
   - (2) ☐ a corporation.
   - (3) ☐ an unincorporated entity *(describe):*
   - (4) ☐ a public entity *(describe):*
   - (5) ☐ other *(specify):*

   c. ☐ except defendant *(name):* N/A
   - (1) ☐ a business organization, form unknown.
   - (2) ☐ a corporation.
   - (3) ☐ an unincorporated entity *(describe):*
   - (4) ☐ a public entity *(describe):*
   - (5) ☐ other *(specify):*

   b. ☐ except defendant *(name):* N/A
   - (1) ☐ a business organization, form unknown.
   - (2) ☐ a corporation.
   - (3) ☐ an unincorporated entity *(describe):*
   - (4) ☐ a public entity *(describe):*
   - (5) ☐ other *(specify):*

   d. ☐ except defendant *(name):* N/A
   - (1) ☐ a business organization, form unknown.
   - (2) ☐ a corporation.
   - (3) ☐ an unincorporated entity *(describe):*
   - (4) ☐ a public entity *(describe):*
   - (5) ☐ other *(specify):*

   ☐ Information about additional defendants who are not natural persons is contained in Attachment 5.
6. The true names of defendants sued as Does are unknown to plaintiff.
   - a. ☐ Doe defendants *(specify Doe numbers):* N/A were the agents or employees of other named defendants and acted within the scope of that agency or employment.
   - b. ☐ Doe defendants *(specify Doe numbers):* N/A are persons whose capacities are unknown to plaintiff.
7. ☐ Defendants who are joined under Code of Civil Procedure section 382 are *(names):* N/A

8. This court is the proper court because
   - a. ☐ at least one defendant now resides in its jurisdictional area.
   - b. ☐ the principal place of business of a defendant corporation or unincorporated association is in its jurisdictional area.
   - c. ☒ injury to person or damage to personal property occurred in its jurisdictional area.
   - d. ☐ other *(specify):*

9. ☒ Plaintiff is required to comply with a claims statute, and
   - a. ☒ has complied with applicable claims statutes, or
   - b. ☐ is excused from complying because *(specify):*

---

**COMPLAINT—Personal Injury, Property Damage, Wrongful Death**

SHORT TITLE: FEARENCE VS. NORMAN, ALVAREZ, CROSBY, VANG, THURMON, AND SANDS.

CASE NUMBER:

10. The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached):*
a. ☐ Motor Vehicle
b. ☐ General Negligence
c. ☒ Intentional Tort
d. ☐ Products Liability
e. ☐ Premises Liability
f. ☒ Other *(specify):* EXEMPLARY DAMAGES, AND TOM BANE CIVIL RIGHTS SUIT ATTACHED.

11. Plaintiff has suffered *(check all that apply)*
a. ☐ wage loss.
b. ☐ loss of use of property.
c. ☐ hospital and medical expenses.
d. ☐ general damage.
e. ☐ property damage.
f. ☐ loss of earning capacity.
g. ☒ other damage *(specify):* VIOLATION OF CIVIL RIGHTS UNDER TOM BANE SEE CALIFORNIA CIVIL CODE, §52.1.

12. ☐ The damages claimed for wrongful death and the relationships of plaintiff to the deceased are
a. ☐ listed in Attachment 12. N/A
b. ☐ as follows:

13. The relief sought in this complaint is within the jurisdiction of this court. YES.

14. Plaintiff prays for judgment for costs of suit; for such relief as is fair, just, and equitable; and for
a. (1) ☒ compensatory damages.
   (2) ☒ punitive damages.
b. The amount of damages is *(in cases for personal injury or wrongful death, you must check (1)):*
   (1) ☒ according to proof.
   (2) ☒ in the amount of: $ 25,000 AND MORE TO BE DETERMINED.
15. ☐ The paragraphs of this complaint alleged on information and belief are as follows *(specify paragraph numbers):* 10, 11, 13, & 14.

Date: 7/29/2024

JAQUES OMAR FEARENCE
(TYPE OR PRINT NAME)

(SIGNATURE OF PLAINTIFF OR ATTORNEY)

**COMPLAINT—Personal Injury, Property Damage, Wrongful Death**

For your protection and privacy, please press the Clear This Form button after you have printed the form.

Print this form | Save this form | Clear this form

PLD-PI-001(6)

SHORT TITLE: FEARENCE VS. CDCR AT EL.,
NORMAN, ALVAREZ, CROSBY, YANG, THURMON & SANDS.

CASE NUMBER:

## Exemplary Damages Attachment

Page 1

ATTACHMENT TO ☒ Complaint ☐ Cross - Complaint

EX-1. As additional damages against defendant (name): SEE ATTACHED DOCUMENTS IN COMPLAINT.

Plaintiff alleges defendant was guilty of
☒ malice
☒ fraud
☒ oppression

as defined in Civil Code section 3294, and plaintiff should recover, in addition to actual damages, damages to make an example of and to punish defendant.

EX-2. The facts supporting plaintiff's claim are as follows: SEE ATTACHED ON AND/OR IN PLD-PI-001 COMPLAINT.

EX-3. The amount of exemplary damages sought is
a. ☐ not shown, pursuant to Code of Civil Procedure section 425.10.
b. ☒ $25,000 AND MORE.

Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001(6) [Rev. January 1, 2007]

**Exemplary Damages Attachment**

Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov

SHORT TITLE: FEARENCE VS. CDCR AT EL.,
NORMAN, ALVAREZ, CROSBY, VANG, THURMON & SANDS.

CASE NUMBER

_1_
(number)     **CAUSE OF ACTION—Intentional Tort**     Page  2

ATTACHMENT TO  ☑ Complaint  ☐ Cross-Complaint

*(Use a separate cause of action form for each cause of action.)*

IT-1. Plaintiff *(name):* JAQUES OMAR FEARENCE

alleges that defendant *(name):* CDCR AT EL.,

☐ Does  _N/A_  to _____

was the legal (proximate) cause of damages to plaintiff. By the following acts or omissions to act, defendant intentionally
caused the damage to plaintiff

on *(date):* SEE ATTACHED ON COMPLAINTS.
at *(place):* SEE ATTACHED ON COMPLAINTS.

*(description of reasons for liability):* SEE ATTACHED ON COMPLAINTS.

(INTIMIDATION.)

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001(3) [Rev. January 1, 2007]

**CAUSE OF ACTION—Intentional Tort**

Code of Civil Procedure § 425.12
www.courts.ca.gov

For your protection and privacy, please press the Clear
This Form button after you have printed the form.     | Print this form | | Save this form |

PLD-PI-001(3)

| SHORT TITLE: FEARENCE VS. CDCR AT E.L.., NORMAN, ALVAREZ, CROSBY, VANG, THURMIN, & SANDS. | CASE NUMBER |
|---|---|

**$ 2**     **CAUSE OF ACTION—Intentional Tort**     Page **3**
(number)

ATTACHMENT TO   ☒ Complaint   ☐ Cross-Complaint

*(Use a separate cause of action form for each cause of action.)*

IT-1. Plaintiff *(name):* JAQUES OMAR FEARENCE

alleges that defendant *(name):* CDCR AT E.L..,

☐ Does **N/A** to _____

was the legal (proximate) cause of damages to plaintiff. By the following acts or omissions to act, defendant intentionally caused the damage to plaintiff

on *(date):* SEE ATTACHED COMPLAINTS.
at *(place):*

*(description of reasons for liability):* SEE ATTACHED COMPLAINTS.

(DISCRIMINATION BASED ON RACE, DISABILITITY, AND FAILURE TO TREAT PLAINTIFF EQUALY.)

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001(3) [Rev. January 1, 2007]

**CAUSE OF ACTION—Intentional Tort**

Code of Civil Procedure § 425.12
www.courts.ca.gov

For your protection and privacy, please press the Clear
This Form button after you have printed the form.    | Print this form | | Save this form |



PLD-PI-001(3)

| SHORT TITLE: FEARENCE VS. CDCR AT EL., NORMAN, ALVAREZ, CROSBY, VANG, THURMON, & SANDS. | CASE NUMBER |
|---|---|

**#3**
(number)

**CAUSE OF ACTION—Intentional Tort**   Page 4

ATTACHMENT TO   ☒ Complaint   ☐ Cross-Complaint

*(Use a separate cause of action form for each cause of action.)*

IT-1. Plaintiff *(name)*: JAQUES OMAR FEARENCE

alleges that defendant *(name)*: CDCR AT EL.,

☐ Does   N/A   to _____

was the legal (proximate) cause of damages to plaintiff. By the following acts or omissions to act, defendant intentionally caused the damage to plaintiff

on *(date)*: SEE ATTACHED ON COMPLAINTS.

at *(place)*:

*(description of reasons for liability)*: SEE ATTACHED ON COMPLAINTS.

(THREATS)

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001(3) [Rev. January 1, 2007]

**CAUSE OF ACTION—Intentional Tort**

Page 1 of 1
Code of Civil Procedure § 425.12
www.courts.ca.gov

For your protection and privacy, please press the Clear
This Form button after you have printed the form.   | Print this form. |   | Save this form |



SHORT TITLE: FEARENCE VS. CDCR AT EL.
NORMAN, ALVAREZ, CROSBY, VANG, THURMON, & SANDS.

CASE NUMBER

**4**
(number)

**CAUSE OF ACTION—Intentional Tort**    Page  **5**

ATTACHMENT TO   ☒ Complaint   ☐ Cross-Complaint

*(Use a separate cause of action form for each cause of action.)*

IT-1. Plaintiff (name): JAQUES OMAR FEARENCE

alleges that defendant (name): CDCR AT EL.,

☐ Does _____ to _____

was the legal (proximate) cause of damages to plaintiff. By the following acts or omissions to act, defendant intentionally caused the damage to plaintiff

on (date): SEE ATTACHED ON COMPLAINTS.
at (place):

(description of reasons for liability): SEE ATTACHED ON COMPLAINTS.

(RETALIATION.)

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001(3) [Rev. January 1, 2007]

**CAUSE OF ACTION—Intentional Tort**

Code of Civil Procedure § 425.12
www.courts.ca.gov

For your protection and privacy, please press the Clear
This Form button after you have printed the form.

Print this form   Save this form



SHORT TITLE: FEARENCE VS. CDCR AT EL.,
NORMAN, ALVAREZ, CROSBY, VANG, THURMON, & SANDS.

CASE NUMBER

__2 5__
(number)

**CAUSE OF ACTION—Intentional Tort**     Page  6

ATTACHMENT TO    ☒ Complaint    ☐ Cross-Complaint

*(Use a separate cause of action form for each cause of action.)*

IT-1. Plaintiff *(name):* JAQUES OMAR FEARENCE

alleges that defendant *(name):* CDCR AT EL.,

☐ Does _____ to _____

was the legal (proximate) cause of damages to plaintiff. By the following acts or omissions to act, defendant intentionally
caused the damage to plaintiff

on *(date):*
at *(place):* SEE ATTACHED ON COMPLAINTS.

*(description of reasons for liability):* SEE ATTACHED ON COMPLAINTS.
( COERCION. )

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001(3) [Rev. January 1, 2007]

**CAUSE OF ACTION—Intentional Tort**

Code of Civil Procedure § 425.12
www.courts.ca.gov

For your protection and privacy, please press the Clear
This Form button after you have printed the form.

| Print this form. | Save this form |



Jaques Omar Fearence-V51385
California Medical Facility
P. O. Box-2500
Vacaville, Ca, 95696-2500
PLAINTIFF in Pro Se

# IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, SOLANO COUNTY

JAQUES OMAR FEARENCE,
Plaintiff,
VS.
CALIFORNIA DEPARTMENT OF CORRECTIONS AND
REHABILITATION ("CDCR"), S. NORMAN, M. ALVAREZ, F. CROSBY, T.
VANG, J. THURMON, and A. SANDS,
Defendants.
Superior Court No._____

# COMPLAINT FOR DAMAGES AND TEMPORARY RESTRAINING ORDER, AND PRELIMINARY AND PERMANENT INJUNCTIONS PURSUANT TO CALIFORNIA CIVIL CODE §52.1 TOM BANE CIVIL RIGHTS ACT

## I.
## DEFENDANTS

PLAINTIFF ALLEGES:

1. Defendant CDCR ("CDCR") is, and at all times herein mentioned was a California Department of Corrections and Rehabilitation. CDCR is responsible for the hiring, training, supervision, discipline of employees including herein named Defendants. CDCR is also responsible for the totality of conditions within its facilities.

2. Defendant S. NORMAN ("NORMAN") is, and at all times herein mentioned was a CDCR Correctional Cook, employed at California Medical Facility ("CMF") in Vacaville, CA.

3. At all, times herein mentioned NORMAN was the agent of Defendant CDCR, and was acting within the course and scope of such agency and with the permission and consent of her codefendant.

4. Defendant M. ALVAREZ ("ALVAREZ") is, and at all times herein mentioned was a CDCR Correctional Cook, employed at California Medical Facility ("CMF") in Vacaville, CA.

5. At all, times herein mentioned ALVAREZ was the agent of Defendant CDCR, and was acting within the course and scope of such agency and with the permission and consent of her codefendant.

6. Defendant F. CROSBY ("CROSBY") is, and at all times herein mentioned was a CDCR Correctional Officer, employed at California Medical Facility ("CMF") in Vacaville, CA.

7. At all, times herein mentioned CROSBY was the agent of Defendant CDCR, and was acting within the course and scope of such agency and with the permission and consent of his codefendant.

8. Defendant T. VANG ("VANG") is, and at all times herein mentioned was a CDCR Correctional Officer, employed at California Medical Facility ("CMF") in Vacaville, CA.

9. At all, times herein mentioned VANG was the agent of Defendant CDCR, and was acting within the course and scope of such agency and with the permission and consent of his codefendant.



2

10. Defendant J. THURMAN ("THURMAN") is, and at all times herein mentioned was a CDCR Correctional Lieutenant, employed at California Medical Facility ("CMF") in Vacaville, CA.

11. At all, times herein mentioned THURMAN was the agent of Defendant CDCR, and was acting within the course and scope of such agency and with the permission and consent of his codefendant.

12. Defendant A. SANDS ("SANDS") is, and at all times herein mentioned was a CDCR Associate Warden, employed at California Medical Facility ("CMF") in Vacaville, CA.

13. At all, times herein mentioned SANDS was the agent of Defendant CDCR, and was acting within the course and scope of such agency and with the permission and consent of his codefendant.

# II.
# STATEMENT OF FACTS

## DEFENDANT I

14. Throughout PLAINTIFF's employment within the Main Kitchen, NORMAN constantly refused to let PLAINTIFF work his full-time assignment. NORMAN engaged in behavior using language, which was abusive, profane, and discriminatory while harassing PLAINTIFF on duty. NORMAN constantly treated PLAINTIFF differently as opposed to others in regards to his working assignment in the Main Kitchen. NORMAN provided special treatment to her favorite inmates by giving them whatever they wanted and so forth. PLAINTIFF did pretty much all the work and her favorite inmates did the bare minimum of work, if that, at all, and they got extra food or whatever they wanted and he got nothing at all. NORMAN treated PLAINTIFF with no respect and talked to him of any kind of way and away from him to others as if she was just another inmate with no respect. When PLAINTIFF objected to the unfair treatment, hostility and retaliation

occurred especially when he wanted to work all his hours he was entitled to, but NORMAN did everything she could to stop PLAINTIFF from reporting to his Job Assignment purposely, and prevented him from working an 8-hour shift or more when they needed him to. In addition, NORMAN forced PLAINTIFF to leave early so she can give her favorite workers special treatment like extra food and so forth, and she did that purposely so PLAINTIFF cannot be rewarded for his hard work that he had done especially when he did most of the work for those days.

15. NORMAN, at all times relevant, was a mischief-maker on a consistent basis with her inmate workers by trying to incite and provoke violence within their working environment and within her co-workers. NORMAN was consistently provoking inmates and her co-workers with negativity and improper language by instigating, blowing situations out of proportion, because she disliked many workers as far as inmates and staff in the Main Kitchen. It was so bad that, many times, situations became violent, with aggressive yelling, and profanity and the working environment was toxic.

16. NORMAN discriminated against PLAINTIFF and other inmates close to him due to the fact of guilty by affiliation. When PLAINTIFF first started working in the Main Kitchen, she already had feuds with her co-workers and other inmates. Since PLAINTIFF became accustomed with workers she disliked, inmates and co-workers, she started disliking PLAINTIFF for no legitimate reason other than the fact he became accustomed with someone she disliked, which was insane because he did nothing wrong to her, as far as wrong doing to anyone especially her.

17. When PLAINTIFF filed a grievance of staff misconduct against NORMAN she retaliated against him with threats to fire him from his job assignment, and she utilized intimidation and coercion with her other inmate workers, her co-workers dividing, and conquering, hoping violence would occur between him and other inmates. PLAINTIFF had every right to grieve and file staff misconduct complaints due to her conduct in the Main Kitchen, but at the same time, PLAINTIFF received punished for it.

18. NORMAN manifested discrimination, retaliation, and conspired against the PLAINTIFF for exercising his right to file grievances of misconduct against her. While the PLAINTIFF was at work, he constantly and consistently witnessed NORMAN having secret and private meetings with her co-workers in their office and they were staring at the PLAINTIFF ranting loudly about him in a disrespectful demeaning manner, and in the same instance pointing at PLAINTIFF.

19. After all the drama, PLAINTIFF had noticed a sudden change in most of, but not all of NORMAN'S co-workers' behavior. PLAINTIFF was treated differently as opposed to before, and as opposed to PLAINTIFF's co-workers.

20. NORMAN coerced PLAINTIFF's supervisor to fabricate his job performances and work supervisor's reports, implicating poor performance, poor behavior, and poor attitude stating on them that he influenced other inmate workers negatively. **(See Exhibit A)**

21. NORMAN has fabricated documents also recommended reassignment on false pretenses and this all happened shortly after PLAINTIFF got a raise for good work performance.

22. NORMAN purposely aggravated and provoked the PLAINTIFF, constantly frustrating him, hoping he would get discouraged, and change his job assignment. NORMAN hoped PLAINTIFF would act aggressively so her co-workers could write a Rule Violation Report CDCR 115 to fire him due to the fact he was a liability to their well-being and working environment in the Main Kitchen.

23. PLAINTIFF informed NORMAN's supervisor, the Food Manager, that he would be filing a grievance of staff misconduct against NORMAN; NORMAN heard from a distance and responded by stating, "If he writes me up I'm going to fucking get him fired!" NORMAN was rude, disrespectful, unprofessional, sarcastic, and passive-aggressive due to the fact of foul language and swearing she utilized while she spoke to PLAINTIFF and others.

5

24. On one occasion, PLAINTIFF's supervisor went on vacation and NORMAN assumed his responsibilities for two weeks. NORMAN deliberately did not pay PLAINTIFF for two days. When NORMAN was informed of her mistake, she stated, "Don't worry about it." NORMAN partially corrected the error and did not pay PLAINTIFF for all the work he had performed deliberately and intentionally. NORMAN paid everybody else and did not pay PLAINTIFF for all the work he had performed during her time as his substitute supervisor.

25. PLAINTIFF tried to get his job assignment changed to another department in the Main Kitchen and NORMAN heard about it. NORMAN then coerced her co-workers not to hire PLAINTIFF and they blackballed him by placing him on the blacklist in the Main Kitchen. Even though help was needed and wanted, and NORMAN's co-workers wanted to hire PLAINTIFF, but it never happened.

26. Frivolous Rules Violation Report ("RVR") submissions that NORMAN and her co-workers generated, and coerced her co-workers to generate – forms of intimidation, coercion, threats, and retaliation – forced PLAINTIFF to resign from his assignment in the Main Kitchen. NORMAN generated and submitted the RVR's because PLAINTIFF submitted Grievances concerning NORMAN's conduct.

27. While PLAINTIFF worked in the Main Kitchen, Defendant NORMAN always was indecent, abusive, profane, and used improper language on a regular basis. **(See Exhibit A)**

## DEFENDANT II

28. ALVAREZ engaged in behavior and used language, which was abusive, profane, and discriminatory. She purposely threatened to write PLAINTIFF up with frivolous write-ups stating, **"I'll fuck up your date with the board, because I know you're a lifer, "FUCKING NIGGER IN SPANISH.""**

29. ALVAREZ harassed PLAINTIFF while on duty every single time they worked together. She would constantly nag him and made him do more work than he usually does, work out of his job description and work her own workers was supposed to do.

30. ALVAREZ never respected PLAINTIFF and never treated him equally regardless of his race, color, nation origin, and ancestry. She made the African American/Black inmates do more work than any other races in the Main Kitchen, and she was very disrespectful especially how she talked to PLAINTIFF and other people in a demeaning way as if I am better than you so you do what I say or else.

31. ALVAREZ was not professional and courteous in her dealings with PLAINTIFF and his co-workers in the Main Kitchen especially if they were African American/Black.

32. While they worked together, Defendant ALVAREZ referred to PLAINTIFF by utilizing a derogatory racial slang reference calling him a, **"Fucking nigger,"** in Spanish.

33. ALVAREZ openly displayed disrespect and contempt for others and PLAINTIFF, in the Main Kitchen that disrupted orderly operations within the Institution. Moreover, ALVAREZ's disrespect and contempt incited and provoked violence by referring to PLAINTIFF as a derogatory racial slang reference utilizing the word **"Nigger"** in Spanish in front of people of different races, origins, and nationalities in the Main Kitchen, which threatened to start a race riot.

34. ALVAREZ subjected PLAINTIFF of discrimination because of his race, origin, and nationality while working in the Main Kitchen together. She utilized racially discriminating language and made the African American/Black workers work harder and longer.



35. Every time Defendant ALVAREZ worked while PLAINTIFF did, she was indecent, abusive, profane, and used improper language on a regular basis. She would talk to Plaintiff crazy like lunatics using profanity and did not care if she was disrespectful on a consistent basis.

36. ALVAREZ consistently treated African American/Black inmates differently as oppose to Hispanic/Mexican inmates, who were given special treatment and she only wanted to work with only Hispanic/Mexican inmates. ALVAREZ might choose to work with maybe one African American/Black inmate worker only to keep up appearances of not being racist.

37. ALVAREZ always issued threats in an intimidating manner and coercion in regards to PLAINTIFF and other inmates and co-workers to get her way. She threatened Plaintiff with write-ups stating, **"I'll fuck up your date with the board because I know you're a lifer"** and that is very serious, due to the fact the Board of Parole Hearings and Board of Prison Terms takes that very serious rather fabricated or not.

38. Defendant ALVAREZ has earned a horrendous reputation as a notorious foulmouthed racist for years at California Medical Facility. Furthermore, it seems like ALVAREZ gets away with murder in this Institution (Figuratively Speaking) additionally, due to her stigma.

39. On April 23, 2023, Defendant ALVAREZ addressed PLAINTIFF with a derogatory racial slang reference. At that time, PLAINTIFF's assignment in the Main Kitchen was a Cook Helper, and after completing his work as a Cook, a fellow inmate co-worker by the name of Jeremy Morton asked PLAINTIFF a question. Before PLAINTIFF could respond, ALVAREZ appeared out of nowhere, ordered PLAINTIFF and Morton to place, and stack 500-plus pound metal flatbeds on top of each other. ALVAREZ did so in such a disrespectful and derogatory way as if PLAINTIFF and Morton were her slaves on a plantation.

40.    The flatbeds were 500-plus pounds each and ALVAREZ wanted PLAINTIFF and Morton to stack about five or six of them. PLAINTIFF and Morton were not able to finish with their own work that needed completion of that day due to this incident. The 500-plus pound metal flatbeds, PLAINTIFF had to utilize again later that night, so it seems to PLAINTIFF that she was trying to make their job assignment harder than it was supposed to be intentionally. PLAINTIFF paid it no mine, and responded to her by stating, "It does not make sense to do that when we are going to use them later." ALVAREZ replied, "Are you questioning me?" "So you're not going to do what I say?" PLAINTIFF replied, "No."

41.    Therefore, PLAINTIFF then calmly walked away because she became argumentative and confrontational in a way that made him feel uncomfortable and awkward. As PLAINTIFF was walking away, ALVAREZ started yelling and screaming stating, "So you're not going to do what I say?" "You refusing to do what I say?" "I'm going to fuck up your date with the Board, because I know you're a lifer!" "Pinche Mayate **("TRANSLATION-FUCKING NIGGER")**, I'm going to write you up for not working and refusing a direct order!"

42.    Shortly after threat after threat, due to all the intimidation with her yelling, screaming, swearing, confrontation, and negative conduct ALVAREZ was not finished. ALVAREZ lied to and coerced the Correctional Officer working that day by stating that PLAINTIFF was not working and was being disruptive, demanding removal from the Main Kitchen. The Correctional Officer escorted PLAINTIFF out of his Job Assignment for no reason at all. Defendant ALVAREZ was mentally unstable, erratic, malicious, incompatible as far as working together and communication skills goes, and a racist on top of that. Due to the fact ALVAREZ had her own workers that day and they were all Hispanic/Mexican. In addition, she was not PLAINTIFF's supervisor, and every African American/Black inmate that worked for her was terminated, either quitted, or did not show up because of reputation and what they heard about ALVAREZ.

9

43. In addition, ALVAREZ stated to another African American/Black inmate by the name of Glenn W. Jennings, "If you don't do what I tell you and you better, your next!" "Black inmates are lazy!" "I'm going to change up and fire the whole P.M. crew and get new workers!" ALVAREZ stated that because African American/Black inmates were majority predominate workers at the time of this incident on P.M. shift.

44. On that shameful day, Defendant ALVAREZ threatened, intimidated, and coerced her co-workers, Correctional Officers, PLAINTIFF, and other African American/Black inmates in order to get her way. Moreover, ALVAREZ was also involved in the conduct that Defendant NORMAN manifested and in fact, it was part of the retaliation for filing grievances against her from her co-worker Defendant NORMAN. Defendant ALVAREZ disgraced herself, her co-workers, and the Department with her ridiculous outrageous conduct. **(See Exhibit A)**

## DEFENDANT III

45. Defendant CROSBY openly displayed disrespect and contempt for PLAINTIFF in a manner potentially disrupting orderly operations within the institution to incite, provoke, and threaten violence by the way he spoke to him on February 13, 2023.

46. PLAINTIFF has a severe vision impairment/disability and he is currently under the American Disability Act for disabled inmates. PLAINTIFF has a Constitutional Right to utilize the elevator, and a Constitutional Right to practice any religion as he chooses. Harassment not permitted due to the practice of religion of any form whatsoever. Permission given to PLAINTIFF for attendance at Chapel B as well as practice of religion pursuant to the First Amendment of the U.S. Constitution and the California Constitution.

47. In addition, pursuant to CCR Title 15 §3041 Performance Subsection (b): Inmates must report to their place of assignment at the time designated by the Institutions schedule of activities and as instructed by their assignment supervisor.

48. On February 13, 2023, PLAINTIFF was emerging from Chapel B where he was attending religious services. As PLAINTIFF attempted to walk past the Unit 1 Gate, where Defendant CROSBY's post was, Defendant informed PLAINTIFF that he could not pass to utilize the elevator for inmates with impairments/disabilities. PLAINTIFF to report to his respective housing unit or elsewhere frequently utilizes the elevator. PLAINTIFF informed Defendant CROSBY that he is DPV, which is Disabled Person Vision, and that he needed to utilize the elevator to report to his housing unit.

49. CROSBY denied PLAINTIFF access to the elevator due to the fact he had the belief that PLAINTIFF wanted to roam around the Unit and not utilize the elevator. CROSBY had no solid proof that PLAINTIFF would do such a thing. CROSBY then asked the PLAINTIFF for his Prison Identification Card and his Job Assignment Card attached to it, then that is when Defendant realized his assignment was in the Main Kitchen. Moreover, CROSBY came up with the assumption that PLAINTIFF was trying to roam the hallways of Unit 1 instead of reporting to his housing unit and his Job Assignment.

50. Because of the denial of access to the elevator, CROSBY stated that PLAINTIFF was to be at work instead of where he was at that moment. Shortly after the shenanigans engaged by Correctional/Peace Officer CROSBY for no apparent, reason other than to harass PLAINTIFF, as well as to threaten and intimidate PLAINTIFF with frivolous false write-ups and amongst other negative fraudulent things he thought of in regards to PLAINTIFF. PLAINTIFF stated that he would be writing up CROSBY for his detrimental conduct on his behalf for refusing access to the elevator due to his impairment/disability under the American Disability Act.

51. After all that, PLAINTIFF had been forced to take the stairs to report to his housing unit. Defendant CROSBY also took it so far as to coerce and instruct his co-workers not to let PLAINTIFF report to his job assignment out of his housing unit and to his job assignment located at the Main Kitchen because of the fact he

informed CROSBY that he would be filing a grievance of misconduct against him. CROSBY's excuse was that PLAINTIFF was out of bounds and he wanted access to the elevator to roam the hallways.

52. However, PLAINTIFF was not out of bounds due to the fact it was permissible for him to attend religious activities at Chapel B, which was permitted by staff. In addition, CROSBY denied PLAINTIFF, having an impairment/disability, access to the elevator. That denial denied PLAINTIFF his American Disability Act Rights under Federal Law to have access to elevators rather than utilizing the stairs.

53. The whole incident was an ugly one due to all the improper language used, retaliation, grudges, and indecent conduct exhibited. It seemed like Defendant CROSBY did that out of spite and retaliation for his co-workers on the Correctional side and other staff inside the Institution as well. This was a complete denial of PLAINTIFF's rights, and all allegations stated was sustained during an investigation of Correctional misconduct with threats, intimidation, and coercion utilized by F. CROSBY a Correctional /Peace Officer. **(See Exhibit B)**

## DEFENDANTS' IV, V, & VI

54. Furthermore, VANG, THURMON, and SANDS openly displayed disrespect and contempt for PLAINTIFF in a manner disrupting orderly operations within the Institution to incite, provoke, and threaten violence by the way VANG spoke to him, and the way THURMON and SANDS authorized him to treat PLAINTIFF in such a manner in regards to Prison Disciplinary Procedures.

55. VANG, THURMON, and SANDS threatened, intimidated, and coerced PLAINTIFF by their misconduct.

56. On April 29, 2023, while PLAINTIFF was at work in the Main Kitchen, T. VANG approached him and asked if he wanted to attend a CDCR 115 Rule Violation Report Hearing for Log Number: 7288732. PLAINTIFF responded,

"No," and VANG stated he would be back to have PLAINTIFF sign a CDCR 128-B Form: waiver of right to be present.

57. At the end of PLAINTIFF's work assignment shift, he was waiting for Main Kitchen Correctional Officer Charlmers to release him, but instead he approached PLAINTIFF and stated that Defendant VANG had come back with some papers to sign. Therefore, Charlmers escorted PLAINTIFF to where VANG was. VANG had two CDCR 128-B Forms for PLAINTIFF to sign for CDCR 115 Rule Violation Reports Log Number: 7288732 and 7295122.

58. VANG attempted to have PLAINTIFF sign one CDCR 128-B Form by coercion, intimidation, and threats. PLAINTIFF informed VANG that he wanted to be present for CDCR 115 Hearing Log Number: 7295122 and PLAITIFF refused to sign the other CDCR 128-B Form VANG had brought along with him. VANG attempted to force PLAINTIFF to sign the CDCR 128-B Form with threats, coercion, and intimidation stating that if he refuses, a guilty verdict rendered regardless signed or not, so sign it now with such aggression.

59. However, PLAINTIFF asked VANG in regards to Defendant THURMON, "Is LT. J. THURMON going to adjudicate both CDCR 115 Rule Violation Reports at the same time and on the same night." VANG stated, "No," which was incorrect and dishonest because he did just that. VANG also stated, PLAINTIFF should sign both CDCR 128-B Forms anyway, because THURMON is going to render a guilty verdict anyway. So then, PLAINTIFF asked for his Staff Assistant to ensure effective communication. VANG stated that PLAINTIFF did not meet the criteria to have a Staff Assistant, which was also incorrect and dishonest due to the fact of his impairment/disability.

60. PLAINTIFF then proceeded to sign the 128-B Form for CDCR 115 Rule Violation Report Hearing Log Number: 7288732 and refused to sign for CDCR 115 Rule Violation Report Log Number: 7295122. PLAINTIFF then stated that he wanted to be present for CDCR 115 Rule Violation Report Log Number: 7295122

and refused to sign the CDCR 128-B Form waiving his rights to be present, while Charlmers was present as a witness for the whole conversation, and can attest as to the truth PLAINTIFF stated.

61. A few hours later, VANG came to PLAINTIFF's Housing Unit and informed him that THURMON adjudicated both CDCR 115 Rule Violation Reports and rendered a guilty verdict as promised for Log Numbers: 7295122 and 7288732. VANG also stated, "Like I said he would," and walked away ignoring PLAINTIFF while trying to establish communication effectively due to his disability.

62. Defendant SANDS was aware of this incident and made sure the guilty verdict stood, due to the fact he/she had the last say so in the matter, and he/she was involved in all underhanded shenanigans. SANDS signed off on the guilty verdict, so he/she is just as guilty as VANG and THURMON due to issuing and exhibiting threats, intimidation, and coercion. All three Defendants violated PLAINTIFF's Due Process Rights by adjudicating and signing off on an Unconstitutional guilty verdict even though PLAINTIFF and his Staff Assistant was not present during the CDCR 115 Rule Violation Report Hearing.

63. Furthermore, the establishment of Effective Communication provided at best poor if any provided at all to PLAINTIFF thus violating his Due Process Rights all the way around during Kangaroo Court/Prison Disciplinary Hearings.

64. However, Office of Grievances granted PLAINTIFF's allegations and claims of violations in regards to Due Process, Disciplinary Procedures, and it attested to all allegations of threats, intimidation, coercion. (**See Exhibit C Memorandum, dated 12/14/2023 and Grievance Decision Log #: 477812**)

# III.
# CAUSES OF ACTION

Defendant NORMAN demonstrated conduct in direct contradiction to CCR Title 15 §§3040, and 3041. Assignments may be up to a full day of work. It is discrimination that NORMAN treated PLAINTIFF different compared to other inmates in the Main Kitchen, and discriminated against by giving others special treatment.

Defendant NORMAN interfered with the exercise and enjoyment by PLAINTIFF of rights secured by the Federal and State Constitution guaranteed by utilizing threats, intimidation, and coercion in violation of the Tom Bane Act. NORMAN violated PLAINTIFF's Due Process and Equal Protection rights, along with the CCR Title 15 §3004 right to be treated courteously, respectfully, and professionally.

Defendant NORMAN in addition, engaged in conduct that discredited the Department. NORMAN did not respect PLAINTIFF and nor did she treat him equally. NORMAN was not professional and courteous in her dealings with PLAINTIFF in violation of CCR Title 15 §3004.

Every able-bodied person, in accordance with CCR Title 15 §§3040-3041, including the PLAINTIFF, in regards to his job assignment in the Main Kitchen, working for Defendant. NORMAN that is committed to the custody of the Secretary of the Department of Corrections and Rehabilitation is obligated to work as assigned by the Department staff and of other agencies to whom the inmate's custody and supervision delegated.

Every staff employed in the Department must treat inmates equally, fairly, and impartially in accordance with the Equal Protection Clauses of the State and U.S. Constitutions. NORMAN did no such thing. All employees of CDCR must treat inmates respectfully, impartially, and fairly per CCR Title 15 §3004. Employees will not openly display disrespect or contempt for others in any manner intended to or reasonably likely to disrupt orderly operations within the Institutions or to incite or provoke violence.

An inmate has the ability to submit a written grievance to the department containing one or more claims, subject to the requirements in CCR Title 15 §3482, to dispute a policy, decision, action, condition, or omission by the department or departmental staff. Defendants NORMAN, ALVAREZ, and CROSBY violated the right to petition the government for redress of grievances when they retaliated against PETITIONER for filing a grievance in violation of State and Federal Constitutions. (See ¶¶ 17, 18, 23, 44, 51.)

Defendant Alvarez violated rules of conduct of the Department under CCR Title 15 §§3391, and 8104.

Defendant ALVAREZ employed by the California Department of Corrections and Rehabilitation as a Correctional Cook, had interfered with the exercise and enjoyment by PLAINTIFF of rights secured by the Federal and State Constitution guaranteed by utilizing threats, intimidation, and coercion. ALVAREZ has violated PLAINTIFF's Due Process rights to be alert, courteous, respectful, and professional.

DEFENDANT M. ALVAREZ also violated the Equal Protection Clause and PLAINTIFF's Equal Protection Rights to be free from Racial Discrimination guaranteed by the Fourteenth Amendment of the U.S. Constitution and California Constitution, Article I Section 7. ALVAREZ was to be alert, courteous, respectful, and professional in her interactions with inmates such as PLAINTIFF and other African American/Black inmates, but she was not while on duty in the Main Kitchen. PLAINTIFF had the right to be treated respectfully, impartially, and fairly by the Defendant M. ALVAREZ, but due to her conduct he was not because of her foul language and swearing utilized while speaking to PLAINTIFF, thus violating rules of conduct under CCR Title 15 §§3391, and 8104.

Defendant CROSBY employed by the California Department of Corrections and Rehabilitation as a Correctional/Peace Officer, had interfered with the exercise and enjoyment by PLAINTIFF of rights secured by the Federal and State Constitution guaranteed by utilizing threats, intimidation, and coercion. CROSBY has violated PLAINTIFF's Due Process rights to be alert, courteous, respectful, and professional.

Pursuant to CCR Title 15 §3391; Correctional/Peace Officers are to adhere to the professional standards applicable to their profession, be alert, courteous, respectful, and professional in their interactions with inmates, do not engage in any behavior or use language, abusive, profane, discriminatory or harassing while on duty, do not engage in any conduct that discredits the Department. Respect others and treat them equally regardless of religion, disability, or medical condition, thus violating CCR Title 15 §3004 (b). Defendant F. CROSBY violated those standards, which it was not met on the day he came across PLAINTIFF.

Pursuant to CCR Title 11 §§1013 Code of Ethics, and 1205 Serious Misconduct Correctional/Peace Officers are held to a higher standard than inmates, and they shall not do the things CROSBY did which was make threats, intimidation, and coercion in regards to PLAINTIFF and his co-workers to do dirty endeavors of misconduct.

Defendants T. VANG, J. THURMON, and A. SANDS employed by the California Department of Corrections and Rehabilitation as Correctional/Peace Officers, had interfered with the exercise and enjoyment by PLAINTIFF of rights secured by the Federal and State Constitution guaranteed by utilizing threats, intimidation, and coercion. The Defendants had violated PLAINTIFF's Due Process Rights to be alert, courteous, respectful, and professional.

Pursuant to CCR Title 15 §3391; Correctional/Peace Officers are to adhere to the professional standards applicable to their profession, be alert, courteous, respectful, and professional in their interactions with inmates, do not engage in any behavior or use language, abusive, profane, discriminatory or harassing while on duty, do not engage in any conduct that discredits the Department. Respect others and treat them equally regardless of disability, and/or medical condition.

For the record, Defendants T. VANG, J. THURMON, and A. SANDS violated those standards, which they had not met during the inmate Disciplinary Process, thus violating CCR Title 15 §§3318(b)(1)(B), 3999.201, 3315(d)(2)(e), 3320(g)(3)(h). PLAINTIFF's Due Process Rights under Fifth and Fourteenth Amendments of U.S. Constitution and his rights under the California Constitution additionally in the same instance.

17

Pursuant to CCR Title 11 §§1013 Code of Ethics, and 1205 Serious Misconduct Correctional/Peace Officers are held to a higher standard than inmates, and they shall not do the things they have done, thus violating CCR Title 15 §3004 (b). Defendants VANG, THURMON, and SANDS were in complete violation of CCR Title 11 §§1013, and 1205 and CCR Title 15 §§3391, 3318(b) (1) (B), 3999.201, 3315(d) (2) (e), and 3320(g) (3) (h).

NORMAN constantly refused to let PLAINTIFF work his full time assignment, which he was obligated to do so as assigned by the Department. Also, NORMAN would not let PLAINTIFF report to his assignment and work the time designated by the institution's schedule of activities for a full day of work which was in direct contradiction nor in accordance with CCR Title 15 §§3040, and 3041.

When PLAINTIFF filed a grievance of staff misconduct against NORMAN, ALVAREZ and she, and the rest of their co-workers retaliated against him with threats and write-ups to fire him from his job assignment, and in fact they actually did issue him a few write-ups in attempts to force him out of his Job Assignment with success. Thus, that was in violation of USCS Constitution Amendment 1; California Constitution, Article I Section 3; and CCR Title 15 §3481, Right to petition the Government for a redress of grievances, and Staff shall not retaliate against a claimant for seeking to informally resolve a claim or for submitting a grievance or appeal.

NORMAN and ALVAREZ engaged in behavior using language, which was abusive, profane, and discriminatory while harassing PLAINTIFF on duty. In addition, they engaged in conduct that discredited the Department. NORMAN and ALVAREZ did not respect PLAINTIFF and nor did they treat him equally. Both NORMAN and ALVAREZ was not professional nor courteous in their dealings with PLAINTIFF, thus violating CCR Title 15 §§3391, 8104, and 3004 and the Equal Protection Clause of the U. S. Fourteenth Amendment and California Constitutions, Article I, Section 7.

Employees will not subject other persons to any form of discrimination, and as far as NORMAN and ALVAREZ, all they ever did was discriminate against PLAINTIFF and other inmates close to him due to the fact of guilty by affiliation. Thus, violating CCR Title 15 §§3391, and 3004 (c) and the Equal Protection Clause of the U. S. Fourteenth Amendment and California Constitutions, Article I, Section 7.

Every staff employed in the Department must treat inmates equally, fairly, and impartially. NORMAN did no such thing. All employees of CDCR must treat inmates respectfully, impartially, and fairly. Employees will not openly display disrespect or contempt for others in any manner intended to or reasonably likely to disrupt orderly operations within the Institutions or to incite or provoke violence. NORMAN did the exact opposite, due to the fact she was a mischief-maker on a consistent basis with her inmate workers by trying to incite and provoke violence with them and co-workers, thus violated CCR Title 15 §3004(a)(b)(c). Furthermore, As far as PLAINTIFF's rights, the Equal Protection Clause and Equal Protection Rights guaranteed by the Fourteenth Amendment of the U.S. Constitution, and California Constitution, Article I Section 7, which has been violated.

NORMAN and ALVAREZ was so rude, disrespectful, unprofessional, sarcastic, and passive-aggressive, due to the fact of foul language and swearing they utilized while they spoke to PLAINTIFF, thus violating rules of conduct of the Department under CCR Title 15 §§3391, and 8104.

PLAINTIFF had the right to be treated respectfully, impartially, and fairly by NORMAN and ALVAREZ, but due to their egregious conduct, he was not because of foul language and swearing utilized while spoken to on a consistent basis repeatedly, thus violating rules of conduct under CCR Title 15 §§3391, 8104 , and 3004.

Defendant ALVAREZ also violated the Equal Protection Clause and PLAINTIFF's Equal Protection Rights to be free from Racial Discrimination guaranteed by the Fourteenth Amendment of the U.S. Constitution, and California Constitution, Article I Section 7. ALVAREZ was to be alert, courteous, respectful, and professional in her interactions with inmates such as PLAINTIFF and other African American/Black inmates, but she was not, thus also violating CCR Title 15 §§3391, 8104, and 3004.

ALVAREZ was not professional and courteous in her dealings with PLAINTIFF and his co-workers in the Main Kitchen especially if they were African American/Black inmates, while they worked together. The Defendant ALVAREZ referred to PLAINTIFF by utilizing a derogatory racial slang reference calling him a **"Fucking nigger"** in Spanish, while on duty in the Main Kitchen, thus violating rules of conduct under CCR Title 15 §§3391, and 8104, and 3004. In addition, she violated the Equal Protection Clause and PLAINTIFF's Equal Protection Rights to be free from Racial Discrimination guaranteed of the Fourteenth Amendment of the U.S. Constitution, and California Constitution, Article I Section 7 as well.

When PLAINTIFF filed a grievance of staff misconduct against NORMAN she retaliated against him with treats to fire him from his job assignment, and utilized intimidation and coercion with her inmate workers, and her co-workers dividing, and conquering, hoping violence would occur between him and other inmates. NORMAN manifested discrimination, retaliation, and conspired against the PLAINTIFF for exercising his right to file grievances of misconduct against her. Thus, that was in violation of USCS Constitution Amendment 1; California Constitution, Article I Section 3; and CCR TITLE 15 §3481, Right to petition the Government for a redress of grievances, and Staff shall not retaliate against a claimant for seeking to informally resolve a claim or for submitting a grievance or appeal. Moreover, violations of CCR Title 15 §§3391, and 8104, and 3004 too.

ALVAREZ engaged in behavior and used language, which was abusive, profane, and discriminatory. ALVAREZ harassed PLAINTIFF while on duty every single time they worked together, and she engaged in conduct that discredited the Department. ALVAREZ never respected PLAINTIFF and never treated him equally regardless of his race, color, nation origin, and ancestry, thus, in violation of the Equal Protection Clause and PLAINTIFF's Equal Protection Rights to be free from Racial Discrimination and rights to be equally treated, guaranteed by the Fourteenth Amendment of the U.S. Constitution, and California Constitution, Article I Section 7. Also, in violation of CCR Title 15 §§3391, 8104, and 3004.

CROSBY openly displayed disrespect and contempt for PLAINTIFF in a manner potentially disrupting orderly operations within the Institution to incite, provoke, and threaten violence by the way he spoke to him, thus violating CCR Title 15 §3004 (a) and (b). Defendant CROSBY violated those standards, which Defendant CROSBY had not met on the day he came across PLAINTIFF on February 13, 2023.

Pursuant to CCR Title 11 §§1013 Code of Ethics, and 1205 Serious Misconduct Correctional/Peace Officers are held to a higher standard than inmates, and they shall not do the things CROSBY, VANG, THURMON, and SANDS did which was make threats, intimidation, and coercion in regards to PLAINTIFF by doing dirty endeavors of misconduct.

Because of the denial of access to the elevator, CROSBY stated that PLAINTIFF was to be at work instead of where he was at that moment. Shortly after the shenanigans engaged by Correctional/Peace Officer CROSBY for no apparent, reason other than to harass PLAINTIFF, as well as to threaten and intimidate PLAINTIFF with frivolous false write-ups. PLAINTIFF stated that he would be writing up CROSBY for his detrimental conduct on his behalf for refusing access to the elevator due to his impairment/disability under the American Disability Act.

For the record, Defendants T. VANG, J. THURMON, and A. SANDS violated standards, which they had not met during the inmate Disciplinary Process, thus violating CCR Title 15 §§3318(b)(1)(B), 3999.201, 3315(d)(2)(e), 3320(g)(3)(h). PLAINTIFF's Due Process Rights under Fifth and Fourteenth Amendments of U.S. Constitution and his rights under the California Constitution, Article I Section 7, additionally in the same instance.

Furthermore, VANG, THURMON, and SANDS openly displayed disrespect and contempt for PLAINTIFF in a manner disrupting orderly operations within the Institution to incite, provoke, and threaten violence by the way VANG treated, and addressed him, and the way THURMON and SANDS authorized him to treat PLAINTIFF in such a way, thus violating CCR Title 15 §3004 (a) and (b).

Defendants VANG, THURMON, and SANDS were in complete violation of CCR Title 11 §§1013, and 1205 and CCR Title 15 §§3391, 3318(b) (1) (B), 3999.201, 3315(d) (2) (e), and 3320(g) (3) (h).

S. NORMAN, M. ALVAREZ, F. CROSBY, T. VANG, J. THURMAN, AND A. SANDS of the California Department of Corrections and Rehabilitation shall comply with all laws, including applicable sections of the California Code of Regulations, Title 15 and Title 2, section 172, General Qualifications, but refused and failed to do so due to said allegations, thus violating said authority.

# IV.
## RIGHTS AND STATUTES

## USCS Constitution Amendment 1

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

# USCS Constitution, Amendment 14

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law, which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

# 42 USCS Section 12101

(a) (1); physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination; others who have a record of a disability or are regarded as having a disability also have been subjected to discrimination;

(b) It is the purpose of this Act,

(1) To provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2) To provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and

(4) To invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

# California Constitution, Article I Section 3;

(a): The people have the right to instruct their representatives, petition government for redress of grievances, and assemble freely to consult for the common good.

# California Constitution, Article I Section 7:

(a): A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws; provided, that nothing contained herein or elsewhere in this Constitution imposes upon the State of California or any public entity, board, or official any obligations or responsibilities which exceed those imposed by the Equal Protection Clause of the 14th Amendment to the United States Constitution with respect to the use of pupil school assignment or pupil transportation. In enforcing this subdivision or any other provision of this Constitution, no court of this state may impose upon the State of California or any public entity, board, or official any obligation or responsibility with respect to the use of pupil school assignment or pupil transportation, (1) except to remedy a specific violation by such party that would also constitute a violation of the Equal Protection Clause of the 14th Amendment to the United States Constitution, and (2) unless a federal court would be permitted under federal decisional law to impose that obligation or responsibility upon such party to remedy the specific violation of the Equal Protection Clause of the 14th amendment of the United States Constitution.

# CCR TITLE 15 §3481. Claimant's Ability to Grieve and to Appeal

(a) A claimant has the ability to submit a written grievance to the department containing one or more claims, subject to the requirements in section 3482, to dispute a policy, decision, action, condition, or omission by the department or departmental staff.

(d) Staff shall not retaliate against a claimant for seeking to informally resolve a claim or for submitting a grievance or appeal.

# CCR Title 15 §8104 Employee Conduct

(a) Employees must be professional and courteous in their dealings with incarcerated individuals, fellow employees, visitors, and members of the public. Incarcerated and paroled individuals must not be addressed by derogatory or slang reference.

(b) Allegations made by employees regarding the misconduct of a CDCR Peace Officer must be made in accordance with CCR Title 15, Section 3391.

## CCR Title 15 §3391 Employee and Appointee Conduct

(a) Employees and appointees of the California Department of Corrections and Rehabilitation (CDCR or Department) shall:

(1) Comply with all laws, including applicable sections of the California Code of Regulations, Title 15, and Title 2, section 172, General Qualifications.

(2) Comply with Departmental policy and applicable local operating procedures.

(3) Comply with their duty statements or institution post orders, as applicable.

(4) Adhere to the professional standards applicable to their profession.

(5) Report for duty at the directed and remain in their work assignments until the completion of their workday or tour of duty, except with permission of their supervisor.

(6) Be alert, courteous, respectful, and professional in their interactions with inmates, wards, parolees, fellow employees, visitors, their families, and members of the public.

(7) Do not engage in any behavior or use language, which is sexually explicit, abusive, profane, discriminatory or harassing while on duty. Employees and appointees shall not engage in any conduct that discredits an employee, appointee, or the Department.

(8) Respect others and treat them equally regardless of race, color, nation origin, ancestry, gender, gender identity, gender expression, religion, marital status, age, disability, medical condition, pregnancy, sexual orientation, veteran status, political affiliation, or their membership in a protected class as defined by the State or Federal Law.

(9) Report misconduct, unethical or illegal activity, and any complaints or discipline that impacts professional licensure.

(10) Cooperate with any inquiry or investigation conducted by, or on behalf, of the Department.

(11) Peace Officers shall comply with the Peace Officer Code of Ethics as defined in Title 11, Division 2, Article 1, section 1013. Peace Officers are held to a higher standard of conduct on or off-duty than other public employees.

(b) Failure to adhere to the above expectations, on or-off duty, may result in disciplinary action.

## CCR Title 15 §3004 Rights and Respects of Others

(a) Inmates and Parolees have the right to be treated respectfully, impartially, and fairly by all employees. Inmates and Parolees have the responsibility to treat others in the same manner. Employees and Inmates may use first names in conversation with each other when it is mutually acceptable to both parties.

(b) Inmates, Parolees, and Employees will not openly display disrespect or contempt for others in any manner intended to or reasonably likely to disrupt orderly operations within the Institutions or to incite or provoke violence.

(c) Inmates, Parolees, and Employees will not subject other persons to any form of discrimination because of race, religion, nationality, sex, political belief, age, or physical or mental handicap.

## CCR Title 15 §3040 Participation

(a) Ever able-bodied person committed to the custody of the Secretary of the Department of Corrections and Rehabilitation is obligated to work as assigned by the Department staff and of other agencies to whom the inmate's custody and supervision may be delegated. Assignment may be up to a full day of work, or other programs including Rehabilitative Programs managed by the Division of Rehabilitative Programs (DRP), as defined in section 3000, or a combination of work or other programs.

## CCR Title 15 §3041 Performance

(a) Inmates must perform assigned tasks diligently and conscientiously. Inmates must not pretend illness, otherwise evade attendance, avoid performance in assigned work, education, and programs, or encourage others to do so.

(b) Inmates must report to their place of assignment at the time designated by the institution's schedule of activities and as instructed by their assignment supervisor. Inmates may not leave an assignment without permission to do so.

## CCR Title 15 §3318

(b) Staff Assistance:

(1) The assigned Staff assistant shall:

(B) Advise and assist in the inmate's preparation for a disciplinary hearing, represent the inmate's position is understood, and that the inmate understands the decisions reached.

## CCR Title 15 §3999.201 Effective Communication

(a) The California Department of Corrections and Rehabilitation (CDCR) shall ensure effective communication (EC) is reached and documented when there is an exchange of health care information involving patients with a hearing, vision, or speech impairment; learning disability, developmental disability, or functioning disability; Test of Adult Basic Education (TABE) reading score of 4.0 or less, which includes zero or no TABE score; or limited English Proficiency (LEP), and in health care grievance communications with such patients.

## CCR Title 15 §3315 Serious Rule Violations

(d) An inmate shall be assigned an employee to assist in the investigation of matters pertaining to a disciplinary action when the chief disciplinary officer or designee determines the necessity based on the following criteria.

(2) Staff Assistance.

(e) Witnesses. An inmate may request that friendly and adverse witnesses attend the hearing.

## CCR Title 15 §3320 Hearing Procedures and Time Limitations

(g) The inmate shall normally be present at a disciplinary hearing. When a disciplinary hearing is held without the inmate present, the reason for the absence

shall be documented during the hearing on the RVR (Rule Violation Report). The inmate shall be present at the disciplinary hearing unless:

(3) The inmate has waived the right to be present in writing, or in the case of a refusal to sign a waiver, the refusal was witnessed by a custody officer, documented on a CDC Form 128-B, and attached to the RVR for review by the Senior Hearing Officer at the disciplinary hearing and by the Chief Disciplinary Officer following adjudication of the rules violation report.

(h) Staff who observed, reported, classified, supplied supplemental reports to, or investigate the alleged rule violation; who assisted the inmate in preparing for the hearing; or for any other reason have a predetermined belief of the inmate's guilt or innocence shall not hear the charges or be present during deliberations to determine guilt or innocence and disposition of the charges.

## CCR TITLE 11 §1013. Code of Ethics

The Law Enforcement Code of Ethics shall be administered to all peace officer trainees during the basic course and to all other persons at the time of appointment.

Purpose

Code of Ethics: To insure that all peace officers are fully aware of their individual responsibilities to maintain their own integrity and that of their agency, every peace officer, during basic training, or at the time of appointment, shall be administered the Law Enforcement Code of Ethics.

Code of Ethics

AS A LAW ENFORCEMENT OFFICER, my fundamental duty is to serve; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation, and the peaceful against violence or disorder; and to respect the Constitutional rights of all to liberty, equality, and justice.

I WILL keep my private life unsullied as an example to all; maintain courageous calm in the face of danger, scorn, or ridicule; develop self-restraint; and be constantly mindful of the welfare of others. Honest in thought and deed in both my personal and official life, I will be exemplary in obeying the laws of the land and the regulations of my department. Whatever I see or hear of a confidential nature

or that is confided to me in my official capacity will be kept ever secret unless revelation is necessary in the performance of my duty.

I WILL never act officiously or permit personal feelings, prejudices, animosities, or friendships to influence my decisions. With no compromise for crime and with relentless prosecution of criminals, I will enforce the law courteously and appropriately without fear or favor, malice or ill will, never employing unnecessary force or violence and never accepting gratuities.

I RECOGNIZE the badge of my office as a symbol of public faith, and I accept it as a public trust to be held so long as I am true to the ethics of the police service. I will constantly strive to achieve these objectives and ideals, dedicating myself before God to my chosen profession...law enforcement.

## CCR TITLE 11 §1205. Serious Misconduct

(a) Serious Misconduct is:

(1) Dishonesty relating to the reporting, investigation, or prosecution of a crime, or relating to the reporting of, or investigation of misconduct by, a peace officer or custodial officer, including, but not limited to, false statements, intentionally filing false reports, tampering with, falsifying, destroying, or concealing evidence, perjury, and tampering with data recorded by a body-worn camera or other recording device for purposes of concealing misconduct. For purposes of this subsection, in considering whether a suspension or revocation of certification is proper, the Commission will consider the extent to which the dishonesty related to a material or significant fact in the context of the statement or omission alleged to be dishonest, and will also consider whether the dishonesty appears to have been done willfully or intentionally, with the intent to deceive.

(2) Abuse of power, including, but not limited to, intimidating witnesses, knowingly obtaining a false confession, and knowingly making a false arrest. For purposes of this subsection, in considering whether a suspension or revocation of certification is proper, the Commission will consider the extent to which the abuse of power was a knowing abuse of the power and authority of a public office.

(3) Physical abuse, including, but not limited to, the excessive or unreasonable use of force.

(4) Sexual assault as described in subdivision (b) of Penal Code Section 832.7, and shall extend to acts committed amongst members of any law enforcement agency.

(5) Demonstrating bias on the basis of actual or perceived race, national origin, religion, gender identity or expression, housing status, sexual orientation, mental or physical disability, or other protected status in violation of law or department policy or inconsistent with a peace officer's obligation to carry out their duties in a fair and unbiased manner. This paragraph does not limit an employee's rights under the First Amendment to the United States Constitution.

(6) Acts that violate the law and are sufficiently egregious or repeated as to be inconsistent with a peace officer's obligation to uphold the law or respect the rights of members of the public, as determined by the Commission.

(7) Participation in a law enforcement gang. For the purpose of this paragraph, a "law enforcement gang" means a group of peace officers within a law enforcement agency who may identify themselves by a name and may be associated with an identifying symbol, including, but not limited to, matching tattoos, and who engage in a pattern of on-duty behavior that intentionally violates the law or fundamental principles of professional policing, including, but not limited to, excluding, harassing, or discriminating against any individual based on a protected category under federal or state antidiscrimination laws, engaging in or promoting conduct that violates the rights of other employees or members of the public, violating agency policy, the persistent practice of unlawful detention or use of excessive force in circumstances where it is known to be unjustified, falsifying police reports, fabricating or destroying evidence, targeting persons for enforcement based solely on protected characteristics of those persons, theft, unauthorized use of alcohol or drugs on duty, unlawful or unauthorized protection of other members from disciplinary actions, and retaliation against other officers who threaten or interfere with the activities of the group.

(8) Failure to cooperate with an investigation into potential police misconduct, including an investigation conducted pursuant to Chapter 1 of Title 4 of Part 4 of the Penal Code. For purposes of this paragraph, the lawful exercise of rights granted under the United States Constitution, the California Constitution, or any other law shall not be considered a failure to cooperate.

(9) Failure to intercede when present and observing another officer using force that is clearly beyond that which is necessary, as determined by an objectively reasonable officer under the circumstances, taking into account the possibility that other officers may have additional information regarding the threat posed by a subject.

# V.
# INJUNCTION

The Defendants' wrongful conduct, unless and until enjoined and restrained by order of this court, will cause great and an irreparable injury to PLAINTIFF in that Defendants may conspire against him. Defendants will produce fabricated frivolous and fraudulent Rules Violations Reports ("RVR's"), to try to transfer PLAINTIFF to a different facility more severe and far more restrictive than the one currently housed and confiscate his personal property for fabricated reasons and these actions would cause great hardship to the PLAINTIFF for something he had the right to do.

# VI.
# PRAYER FOR RELIEF

PLAINTIFF has no adequate remedy at law for the injuries currently being suffered, which include loss of privileges, credit earning, milestones, and job placement, property loss, harassment, retaliation, and conspiring against him, in that PLAINTIFF is an incarcerated individual with limited access to the courts.

As a proximate result of the CDCR/Defendants' interference with PLAINTIFF's rights under the State and Federal Constitutions, violations of California statutory laws and regulations, and the Americans with Disabilities Act, PLAINTIFF has suffered general damages in an amount of $25,000.00 and also to be determined.

WHEREFORE, PLAINTIFF prays judgment against each defendants, NORMAN, ALVAREZ, CROSBY, VANG, THURMON, and SANDS as follows:

1. For actual damages in an amount of $25,000.00 and whatever determined,

2. For an order requiring Defendants, and each of them, to show cause why they should not be enjoined as hereinafter set forth, during the pendency of this action;

3. For a temporary restraining order, preliminary injunction, and permanent injunction, all enjoining CDCR/Defendants, each of them, and their agents, servants, and employees, and all persons acting under, in concert with, or for them:

   a.) From issuing Rule Violations Reports or otherwise punishing PLAINTIFF without administrative approval;

   b.) From transferring PLAINTIFF to any other Institution or restrictive Institution without administrative approval;

   c.) From retaliation, harassment, and conspiracy to do harm to PLAINTIFF;

7. For costs of suit herein incurred; appointment of counsel due to indigence and cost of for PLAINTIFF if appointed, and any other fees charged by the court.

8. For such other and further equitable relief as the court deems proper.

# VERIFICATION

I, Jaques Omar Fearence, am the PLAINTIFF in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters, which are therein alleged on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: April 23, 2024

X _Jaques Fearence_
Jaques Omar Fearence
Plaintiff

32

# CERTIFICATE OF LENGTH

Re: FEARENCE VS. (CDCR) NORMAN, ALVAREZ, CROSBY, VANG, THURMON, AND SANDS.

I Jaques Omar Fearence, In Pro Se, certify pursuant to the California Rules of Court that the word count for this document is 9,524 words. This document was prepared in Microsoft Word and this is word count generated by the program for this document.

I declare under penalty of perjury of the laws of the State of California that the foregoing is true and correct. Executed on April 23, 2024, at Vacaville, California.

X _____
Jaques Omar Fearence
Plaintiff

# EXHIBIT

# A

# DECLARATION OF GLENN W. JENNINGS

I, Glenn W. Jennings declare under penalty of perjury that:

1. I am an inmate housed at California Medical Facility, and employed in the Main Kitchen/Diet kitchen.

2. I can attest for inmate Jaques O. Fearence that CSC S. Norman and CSC M. Alvarez violated CCR Title 15 Sections 3087.1, 8104, 3391, 3004(a) (b) (c), 3040(a), and 3041(a) (b).

3. I can attest that, CSC M. Alvarez used a derogatory racial slang reference by calling Jaques O. Fearence a **"FUCKING NIGGER"** In Spanish.

4. I can attest that, CSC M. Alvarez stated, **"I'M GOING TO FUCK UP YOUR DATE WITH THE BOARD, BECAUSE I KNOW YOU'RE A LIFER."**

5. I can attest that, CSC M. Alvarez and CSC S. Norman wrote and fabricated CDCR documents purposely to harm Jaques O. Fearence and me.

6. I can attest that, CSC S. Norman and CSC M. Alvarez manifested discrimination, and targeted and retaliated against Jaques O. Fearence and me.

7. I can attest that, while Jaques O. Fearence was employed In the Main Kitchen CSC S. Norman and CSC M. Alvarez interfered with threats, intimidation, and coercion, by denying his rights secured by the Constitution and Laws of the United States.

I declare under penalty of perjury on this 27th day of September 2023, at California Medical Facility at Vacaville California, under the Laws of the state of California that
the foregoing is true and correct.

X _____
GLENN W. JENNINGS

# DECLARATION OF ANGELO MELENDEZ

I, Angelo Melendez declare under penalty of perjury that:

1. I am an inmate housed at California Medical Facility, and employed in the Main Kitchen.

2. I can attest for inmate Jaques O. Fearence that CSC S. Norman and CSC M. Alvarez violated CCR Title 15 Sections 3087.1, 8104, 3391, 3004(a) (b) (c), 3040(a), and 3041(a) (b).

3. I can attest that, CSC M. Alvarez used a derogatory racial slang reference by calling Jaques O. Fearence a **"FUCKING NIGGER"** In Spanish.

4. I can attest that, CSC M. Alvarez stated, **"I'M GOING TO FUCK UP YOUR DATE WITH THE BOARD, BECAUSE I KNOW YOU'RE A LIFER."**

5. I can attest that, CSC M. Alvarez and CSC S. Norman wrote and fabricated CDCR documents purposely to harm Jaques O. Fearence.

6. I can attest that, CSC S. Norman and CSC M. Alvarez manifested discrimination, and targeted and retaliated against Jaques O. Fearence.

7. I can attest that, while Jaques O. Fearence was employed In the Main Kitchen CSC S. Norman and CSC M. Alvarez interfered with threats, intimidation, and coercion, by denying his rights secured by the Constitution and Laws of the United States.

I declare under penalty of perjury on this 27th day of September 2023, at California Medical Facility at Vacaville California, under the Laws of the state of California that the foregoing is true and correct.

X _Angelo Melendez_
ANGELO MELENDEZ

# DECLARATION OF RYAN WARD

I, Ryan Ward declare under penalty of perjury that:

1. I was an inmate housed at California Medical Facility, and I was employed in the Main Kitchen.

2. I can attest for inmate Jaques O. Fearence that CSC S. Norman and CSC M. Alvarez violated CCR Title 15 Sections 3087.1, 8104, 3391, 3004(a) (b) (c), 3040(a), and 3041(a) (b).

3. I can attest that, CSC M. Alvarez used a derogatory racial slang reference by calling Jaques O. Fearence a **"FUCKING NIGGER"** In Spanish.

4. I can attest that, CSC M. Alvarez stated, **"I'M GOING TO FUCK UP YOUR DATE WITH THE BOARD, BECAUSE I KNOW YOU'RE A LIFER."**

5. I can attest that, CSC M. Alvarez and CSC S. Norman wrote and fabricated CDCR documents purposely to harm Jaques O. Fearence.

6. I can attest that, CSC S. Norman and CSC M. Alvarez manifested discrimination, and targeted and retaliated against Jaques O. Fearence.

7. I can attest that, while Jaques O. Fearence was employed In the Main Kitchen CSC S. Norman and CSC M. Alvarez interfered with threats, intimidation, and coercion, by denying his rights secured by the Constitution and Laws of the United States.

I declare under penalty of perjury on this 27th day of July 2023, at California Medical Facility at Vacaville California, under the Laws of the state of California that
the foregoing is true and correct.

X _Ryan Ward_
RYAN WARD

# DECLARATION OF BRANDON RUIZ

I, Brandon Ruiz declare under penalty of perjury that:

1. I was an inmate housed at California Medical Facility, and I was employed in the Main Kitchen.
2. I can attest for inmate Jaques O. Fearence that CSC S. Norman and CSC M. Alvarez violated CCR Title 15 Sections 3087.1, 8104, 3391, 3004(a) (b) (c), 3040(a), and 3041(a) (b).
3. I can attest that, CSC M. Alvarez used a derogatory racial slang reference by calling Jaques O. Fearence a "**FUCKING NIGGER**" In Spanish.
4. I can attest that, CSC M. Alvarez stated, "**I'M GOING TO FUCK UP YOUR DATE WITH THE BOARD, BECAUSE I KNOW YOU'RE A LIFER.**"
5. I can attest that, CSC M. Alvarez and CSC S. Norman wrote and fabricated CDCR documents purposely to harm Jaques O. Fearence.
6. I can attest that, CSC S. Norman and CSC M. Alvarez manifested discrimination, and targeted and retaliated against Jaques O. Fearence.
7. I can attest that, while Jaques O. Fearence was employed In the Main Kitchen CSC S. Norman and CSC M. Alvarez interfered with threats, intimidation, and coercion, by denying his rights secured by the Constitution and Laws of the United States.

I declare under penalty of perjury on this 21st day of June 2023, at California Medical Facility at Vacaville California, under the Laws of the state of California that the foregoing is true and correct

X _____

BRANDON RUIZ

# DECLARATION OF JEREMY MORTON

I, Jeremy Morton declare under penalty of perjury that:

1. I am an inmate housed at California Medical Facility, and employed in the Main Kitchen.

2. I can attest for inmate Jaques O. Fearence that CSC S. Norman and CSC M. Alvarez violated CCR Title 15 Sections 3087.1, 8104, 3391, 3004(a) (b) (c), 3040(a), and 3041(a) (b).

3. I can attest that, CSC M. Alvarez used a derogatory racial slang reference by calling Jaques O. Fearence a **"FUCKING NIGGER"** In Spanish.

4. I can attest that, CSC M. Alvarez stated, **"I'M GOING TO FUCK UP YOUR DATE WITH THE BOARD, BECAUSE I KNOW YOU'RE A LIFER."**

5. I can attest that, CSC M. Alvarez and CSC S. Norman wrote and fabricated CDCR documents purposely harm Jaques O. Fearence.

6. I can attest that, CSC S. Norman and CSC M. Alvarez manifested discrimination, and targeted and retaliated against Jaques O. Fearence.

7. I can attest that, while Jaques O. Fearence was employed In the Main Kitchen CSC S. Norman and CSC M. Alvarez interfered with threats, intimidation, and coercion, by denying his rights secured by the Constitution and Laws of the United States.

I declare under penalty of perjury on this 27th day of September 2023, at California Medical Facility at Vacaville California, under the Laws of the state of California that the foregoing is true and correct.

X _Jeremy Morton_
JEREMY MORTON

# WORK SUPERVISOR'S REPORT

| INMATE NAME | CDC# | FACILITY |
|---|---|---|
| FEARENCE, JAQUES O. | V51385 | CMF-Facility A |

| SECTION NUMBER | SECTION LOCATION | |
|---|---|---|
| 004 | M.K. PM COOKS | |

| POSITION # | POSITION TITLE | |
|---|---|---|
| MKC.004.012 | KITCHEN PM COOK HELPER * | |

| ASSIGNED DATE | CURRENT PAY RATE | |
|---|---|---|
| 12/16/2022 | $0.15 per hour | |

| Evaluation Date: 03/16/2023 | Period Covered: 12/16/2022 to: 03/16/2023 |
|---|---|
| Hours Assigned: 32:30 | Hours Worked: 324 *% 3 MTHS* |

| GRADE | | GRADE | |
|---|---|---|---|
| 3 | A. DEMONSTRATED SKILL AND KNOWLEDGE | 3 | F. TEAMWORK AND PARTICIPATION |
| 2 | B. ATTITUDE TOWARD FELLOW INMATES AND WORKERS | 3 | G. LEARNING ABILITY |
| 3 | C. ATTITUDE TOWARD SUPERVISORS AND STAFF | 3 | H. USE OF TOOLS AND EQUIPMENT |
| 3 | D. INTEREST IN ASSIGNED WORK | 3 | I. QUALITY OF WORK |
| 3 | E. EFFORT DISPLAYED IN ASSIGNED WORK | 2 | J. QUANTITY OF WORK |

| Pay Changes | | |
|---|---|---|
| **Effective Date** | **Pay Scale** | **Status** |
| 12/16/2022 | 0.15 per hour | Applied |

| Recommended for: | ⦿ Retain ◯ Reassignment | |
|---|---|---|
| ☑ Pay Increase | ☐ Pay Decrease | New Pay Rate: $0.20 per hour | Effective Date: 03/17/2023 |

| Code of Safe Practices Reviewed | Supv. Initials _____ | Inmate Initials _____ |
|---|---|---|

## Supervisor Comments

Inmate Fearence shows up to work on time and regularly shows up on assigned shift. I/M Fearence has no issues with given directives and assigned task. I/M Fearence has shown improvements in overall performance.

## Inmate Comments

A. Plaza

**SUPERVISOR**

A. Plaza

LENGTH OF SUPERVISION: 3 Months

**SIGNATURE**

**INMATE SIGNATURE**

☐ REFUSED TO SIGN

CDCR SOMS IJPT100 - WORK SUPERVISOR'S REPORT

IJPS010F - Job Performance

Name: FEARENCE, JAQUES O.

IJPS010F

Page 1 of 2

CDC #: V51385  PID #: 11988006

Thursday May 18, 2023 03:40:23 PM

# Job Performance

Assigned Date: 12/16/2022
Facility: CMF-Central Service [CMF-S]

Assigned Time: 01:01:01
Assignment Job Category:

Assignment Type: MKC
Section #: 004
Position #: 012
Type of Time: Half-Time
Performance Evaluation 03/16/2023 Date:
Period Covered - From*: 12/16/2022

Assignment Title: Main Kitchen Cook
Section Location: M.K. PM COOKS
Position Title: KITCHEN PM COOK HELPER *

To*: 03/16/2023

| Factor | Grade |
|--------|-------|
| A. Demonstrated skill and knowledge | Satisfactory |
| B. Attitude toward fellow inmates and workers | Above Satisfactory |
| C. Attitude toward supervisors and staff | Satisfactory |
| D. Interest in assigned work | Satisfactory |
| E. Effort displayed in assigned work | Satisfactory |
| F. Teamwork and participation | Satisfactory |
| G. Learning Ability | Satisfactory |
| H. Use of tools and equipment | Satisfactory |
| I. Quality of work | Satisfactory |
| J. Quantity of work | Above Satisfactory |

Recommended for:
◉ Retain    ○ Reassignment
☑ Pay Increase    ☐ Pay Decrease    New Pay Rate: $ 0.20 per hour    Effective Date: 03/17/2023

**Work Skills Attained** (1 - 1 of 1)

| Job Title | Skill Level | Competency | |
|-----------|-------------|------------|--|
| Porter | Skilled | Unknown | |
| | | | ➡ |

**Supervisor Comments**

B *I* U 😕 ⚡ ◇ 📄

Inmate Fearence shows up to work on time and regularly shows up on assigned shift. I/M Fearence has no issues with given directives and assigned task. I/M Fearence has shown improvements in overall performance.

**Offender Comments**

**B** *I* <u>U</u>  🕓 ✎ <> 🖼

[ Update ]     [ Delete ]     [ Prior Page ]

Show Last Updated Information

CALIFORNIA DEPARTMENT *of*
**Corrections and Rehabilitation**

# WORK SUPERVISOR'S REPORT

| INMATE NAME | CDC# | FACILITY |
|---|---|---|
| FEARENCE, JAQUES O. | V51385 | CMF-Facility A |

| SECTION NUMBER | SECTION LOCATION | |
|---|---|---|
| 004 | M.K. PM COOKS | |

| POSITION # | POSITION TITLE | |
|---|---|---|
| MKC.004.012 | KITCHEN PM COOK H .LPER * | |

| ASSIGNED DATE | CURRENT PAY RATE | |
|---|---|---|
| 12/16/2022 | $0.20 per hour | |

| Evaluation Date: 04/25/2023 | Period Covered: 03/17/2023 to: 04/24/2023 |
|---|---|
| Hours Assigned: 32:30 | Hours Worked: 157.5 | MTH |

| GRADE | | GRADE | |
|---|---|---|---|
| 5 | A. DEMONSTRATED SKILL AND KNOWLEDGE | 5 | F. TEAMWORK AND PARTICIPATION |
| 5 | B. ATTITUDE TOWARD FELLOW INMATES AND WORKERS | 5 | G. LEARNING ABILITY |
| 5 | C. ATTITUDE TOWARD SUPERVISORS AND STAFF | 5 | H. USE OF TOOLS AND EQUIPMENT |
| 5 | D. INTEREST IN ASSIGNED WORK | 5 | I. QUALITY OF WORK |
| 5 | E. EFFORT DISPLAYED IN ASSIGNED WORK | 5 | J. QUANTITY OF WORK |

| Pay Changes | | |
|---|---|---|
| **Effective Date** | **Pay Scale** | **Status** |
| 03/17/2023 | 0.20 per hour | Applied |

| Recommended for: | ○ Retain  ⦿ Reassignment | |
|---|---|---|
| | ☐ Pay Increase  ☐ Pay Decrease | New Pay Rate: $    Effective Date: |

| Code of Safe Practices Reviewed | Supv. Initials _____ | Inmate Initials _____ |
|---|---|---|

### Supervisor Comments

Inmate Fearence's job performance has declined since his last evaluation. His performance has declined significantly to the point where it now reflects negatively. Fearence will refused to do any job that is not related to cooking. For example, when any supervisor asks him to help with a task other than cooking he refuses and states, "No, it is not my job", he has done this on multiple occasions. Currently his behavior is effecting his co-workers in a negative way. I request to have Inmate Fearence unassigned.

TimeStamp: 25 April 2023 08:30:27 --- User: (PLAN003)
PERN #120988

### Inmate Comments

A. Plaza

LENGTH OF SUPERVISION: 1 month

SUPERVISOR

A. Plaza

SIGNATURE

INMATE SIGNATURE

☐ REFUSED TO SIGN

CDCR SOMS IJPT100 - WORK SUPERVISOR'S REPORT

# Job Performance

Assigned Date: 12/16/2022
Facility: CMF-Central Service  [CMF-S]

Assigned Time: 01:01:01
Assignment Job Category:

Assignment Type: MKC
Section #: 004
Position #: 012
Type of Time: Half-Time
Performance Evaluation 04/25/2023 Date:
Period Covered - From*: 03/17/2023

Assignment Title: Main Kitchen Cook
Section Location: M.K. PM COOKS
Position Title: KITCHEN PM COOK HELPER *

To*: 04/24/2023

| Factor | Grade |
|--------|-------|
| A. Demonstrated skill and knowledge | Below Average |
| B. Attitude toward fellow inmates and workers | Below Average |
| C. Attitude toward supervisors and staff | Unsatisfactory |
| D. Interest in assigned work | Satisfactory |
| E. Effort displayed in assigned work | Satisfactory |
| F. Teamwork and participation | Below Average |
| G. Learning Ability | Satisfactory |
| H. Use of tools and equipment | Below Average |
| I. Quality of work | Below Average |
| J. Quantity of work | Below Average |

Recommended for:
- Retain
- Pay Increase

- • Reassignment
- Pay Decrease

**Work Skills Attained** (1 - 1 of 1)

| Job Title | Skill Level | Competency | |
|-----------|-------------|------------|--|
| Porter | Skilled | Unknown | |
| | | | |

**Supervisor Comments**

**B** *I* <u>U</u>  ☺ ✂ <> 📄

Inmate Fearence's  job performance has declined since his last evaluation. His performance has declined significantly to the point where it now reflects negatively. Fearence will refused to do any job that is not related to cooking. For example, when any supervisor asks him to help with a task other than cooking he refuses and states, "No, it is not my job", he has done this on multiple occasions. Currently his behavior is effecting his co-workers in a negative way. I request to have Inmate Fearence reassigned.

TimeStamp: 25 April 2023 08:30:27 --- User: (PLAN003)

**Offender Comments**

B  *I*  U  🕐  ✍  ◇ 🖼

**Update**       **Delete**       **Prior Page**

Show Last Updated Information

060B

# Assignment Roster

Saturday May 13, 2023 03:30:18 PM

| Capacity: 28 | White: 12%* | Black: 76%* | Hispanic: 6%* |
| Assigned: 17 | Am. Indian: 0% | Other: 6% | Vacancies: 11 |

oster (21 - 28 of 28)

| :# | Inmate Name | Assigned Date | Position # | Position Title | Critical Worker | TABE-Read | Pay Rate | Release Date | Next Perf. Eval. |
|---|---|---|---|---|---|---|---|---|---|
| | Vacant | | MKS.002.005 | DIET KITCHEN SCULLERY | No | | | | |
| | Vacant | | MKW.002.001 | DIET KITCHEN SCULLERY | No | | | | |
| | Vacant | | MKW.002.006 | DIET KITCHEN SCULLERY | No | | | | |
| | Vacant | | MKW.002.008 | DIET KITCHEN SCULLERY | No | | | | |
| | Vacant | | MKW.002.009 | DIET KITCHEN UTILITY | No | | | | |
| | Vacant | | MKW.002.010 | DIET KITCHEN UTILITY | No | | | | |
| | Vacant | | MKW.002.011 | DIET KITCHEN SCULLERY | No | | | | |
| | Vacant | | MKW.002.016 | DIET KITCHEN UTILITY | No | | | | |

**Prior Page**          **Show All Rows**

KC.005.006 – Diet Kitchen cook/Tray relef
<S.002.001 – Diet Kitchen nourishment
<S.002.003 – Det Kitchen Utility

# Assignment Attendance

Assigned Date: 12/16/2022
Facility: CMF-Central Service  [CMF-S]
Assignment Type: MKC
Section #: 004
Position #: 012
Type of Time: Half-Time
Attendance Year: 2023
Pay Scale: 0.20 per hour

Assigned Time: 01:01:01
Assignment Category: Job
Assignment Title: Main Kitchen Cook
Section Location: M.K. PM COOKS
Position Title: KITCHEN PM COOK HELPER *

Attendance Month: May

**Monthly Totals**

Total Hours Present (X): 67.5
Total Hours Excused Absence (E): 0

Total Hours Unable to Attend (S): 0
Total Hours Unexcused Absence (A): 0

Hours Unable to Attend - Staffing: 0
Hours Unable to Attend - Medical: 0

Hours Unable to Attend - Security: 0

(1 - 1 of 13)

| Day of Month | Type of Day | Time In | Time Out | Hours | Type of Time/Reason | Comments | Time - Keeper |
|---|---|---|---|---|---|---|---|
| 01 | Regular Day Off | 13:00 | 17:00 | 4 | RX-Worked Regular Day Off | | Plaza, Andres E [PLAN003] |
| | | | | | ⌄ | | |
| 02 | Tuesday | 12:00 | 19:00 | 7 | X-Present | | Norman, Susan [NOSU002] |
| | | | | | ⌄ | | |
| 03 | Wednesday | 12:00 | 19:00 | 7 | X-Present | | Plaza, Andres E [PLAN003] |
| | | | | | ⌄ | | |

| Day | | Start | End | Hours | Status | | Employee |
|---|---|---|---|---|---|---|---|
| 04 | Thursday | 12:00 | 19:00 | 7 | X-Present | | Plaza, Andres E [PLAN003] |
| | | | | | ⌄ | 📧 | |
| 05 | Friday | 12:00 | 19:00 | 7 | X-Present | | Norman, Susan [NOSU002] |
| | | | | | ⌄ | 📧 | |
| 06 | Saturday | 12:00 | 17:00 | 5 | X-Present | | Guevarra, Jomarghani [GUJO054] |
| | | | | | ⌄ | 📧 | |
| 07 | Regular Day Off | 13:00 | 17:00 | 4 | RX-Worked Regular Day Off | | Norman, Susan [NOSU002] |
| | | | | | ⌄ | 📧 | |
| 08 | Regular Day Off | | | | ⌄ | 📧 | |
| 09 | Tuesday | 12:00 | 19:00 | 7 | X-Present | | Norman, Susan [NOSU002] |
| | | | | | ⌄ | 📧 | |
| 10 | Wednesday | 10:30 | 18:00 | 7.5 | X-Present | | Norman, Susan [NOSU002] |
| | | | | | ⌄ | 📧 | |
| 11 | Thursday | | | | ⌄ | 📧 | |
| 12 | Friday | 12:00 | 19:00 | 7 | X-Present | | Norman, Susan [NOSU002] |

| 13 | Saturday | 12:00 | 17:00 | 5 | X-Present | | Guevarra, Jomarghani [GUJO054] |
|----|----------|-------|-------|---|-----------|---|------------------------------------|
| | | | | | | | |

**Update**     **Delete**     **Prior Page**

<u>Show Last Updated Information</u>

# EXHIBIT

# B

# Memorandum

Date: July 28, 2023

To: J. FEARENCE
V51385
H-337

Subject: **ALLEGATION INVESTIGATION UNIT INVESTIGATION CLOSURE, ALLEGATION AGAINST STAFF TRACKING SYSTEM LOG # 20034312**

**DETERMINATION OF ISSUE:** On February 13, 2023, the California Medical Facility (CMF) Office of Grievances (OOG) received a CDCR Form 602-1, Grievance Form, which was issued log number 363512. The grievance was reviewed by the Centralized Screening Team (CST) and it was determined the grievance met the criteria for staff misconduct and referral to the Allegation Investigation Unit (AIU). This determination closed out the grievance and the allegation was referred to AIU for inquiry. On June 5, 2023, AIU completed their inquiry and forwarded the findings to CMF Hiring Authority.

**SUMMARY OF ALLEGATION:** The claimant alleges on February 13, 2023, Correctional Officer Crosby denied the claimant the ability to report to work. Specifically, the claimant alleges he was denied access to the institutional elevator.

**FINDINGS:** On July 28, 2023, the CMF OOG was notified this investigation has been completed.

The following determination on the allegation was made:

☐ NOT SUSTAINED: The investigation or inquiry failed to disclose a preponderance of evidence to prove or disprove the allegation made in the complaint.

☐ UNFOUNDED: The investigation or inquiry conclusively proved that the act(s) alleged did not occur; or the act(s) may have, or in fact, occurred but the individual employee(s) name in the complaint(s) was not involved.

☐ EXONERATED: The facts, which provided the basis for the complaint or allegation, did in fact occur; however, the investigation or inquiry revealed that the actions were justified, lawful, and proper.

☒ SUSTAINED: The investigation of inquiry disclosed a preponderance of evidence to prove the allegation(s) made in the complaint.

☐ NO FINDING: The investigation revealed that another agency was involved and the complainant has been referred to that agency or the complainant is no longer available for clarification of facts/issues.

**ALL STAFF PERSONNEL MATTERS ARE CONFIDENTIAL IN NATURE.** As such, the details of any inquiry or investigation will not be shared with staff, members of the public, or offender claimants. Although the claimant has the right to submit a staff complaint, a request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the staff complaint process. At the conclusion of this investigation, your administrative remedies are considered exhausted.

DANIEL E. CUEVA
Warden (A)
California Medical Facility

# EXHIBIT
## C

# Memorandum

Date : December 14, 2023

To : **FEARENCE, J.**
V51385
H-205

Subject : **ORDER TO REISSUE/REHEAR RULES VIOLATION REPORT LOG # 7295122.**

On October 11, 2023 Associate Warden L. Bravo, Chief Disciplinary Officer (CDO), re-reviewed Rules Violation Report (RVR) Log #7295122 and determined this RVR required to be reissued/reheard based on a due process violation. Specifically, it was discovered staff did not have signature of refusal prior to the hearing of the RVR. Based on LDI inquiry 435031 recommendation and determination. Documentation does not reflect refusal prior to hearing.

As CDO, this memorandum shall serve as the Order to Reissue/Rehear RVR Log #7295122. Ensure that all due process rights are afforded to Incarcerated Person (IP) **FERANCE**, provide IP **FERANCE** with a copy of this order, and ensure that the Senior Hearing Officer conducts the rehearing and attempts to have the reporting employee made available if requested.

If you have any questions or concerns, please contact me at extension 6511.

*L. Bravo*

**LANDON BRAVO**
Associate Warden
Program Services



## OFFICE OF GRIEVANCES DECISION

**Offender Name:** FEARENCE, JAQUES OMAR **CDC#:** V51385    **Date:** 12/14/2023

**Current Location:** CMF-Facility A

**Log #:** 000000477812          **Current Area/Bed:** A H 2 - 205001L

**Claim #: 001**

**Received at Institution/Parole Region:** California Medical Facility

**Submitted to Facility/Parole District:** CMF-Facility A

**Housing Area/Parole Unit:**

**Category:** Offender Discipline    **Sub-Category:** Hearing Procedures and Time Limitations

## I. CLAIM

The claimant is alleging his due process rights were violated as the staff assistant (SA) Officer Aceves was not present or document the claimant's refusal to attend the disciplinary hearing for Rules Violation Report (RVR) for, Log No. 7295122 (Disobeying an Order). In addition, the claimant is disputing the signing of a waiver and contends to wanting to be present for disciplinary hearing.

## II. RULES AND REFERENCES

### A. CONTROLLING AUTHORITY

Title 15, section 3000, 3001, 3270, 3315, 3318, 3320, 3323, 3380 and 3481;
Department Operations Manual, section 54100.20.3.

## B. DOCUMENTS CONSIDERED

Appeal, Log No. 424447; Rules Violation Report, Log No. 7295122 (Disobeying an Order); April 29, 2023, CDCR Form 128B, referencing Log No. 7295122; Rules Violation Report (RVR), Log No. 7288732 (Refusing to Accept Assigned Housing-Delaying a Peace Officer); Interview information contained in the Offender Grievance Tracking system.

## III. REASONING AND DECISION

The Strategic Offender Management System (SOMS) reflects claimant met with Correctional Officer T. Vang on April 28, 2023, regarding RVR, Log No. 7288732 (Refusing to Accept Assigned Housing-Delaying a Peace Officer). Correctional Officer Vang was not listed as claimant 's SA for RVR Log No. 7295122 (Disobeying an Order). The April 29, 2023, CDCR Form 128B, referencing RVR Log No. 7295122, reflects claimant refused to sign the form, refusing to attend this hearing. If the incarcerated person does not want to attend the hearing, the SA shall speak with them before the start of the hearing and encourage them to attend. If they still decline to attend the hearing, the SA shall document their interaction and their use of EC during the interaction.

## IV. REMEDY

Claimant's staff assistant (Correctional Officer Aceves) was not present when claimant was explained and refused to sign the absentia chrono as required for effective communication and due process. RVR log # 7295122 shall be ordered reissued and reheard, pursuant to the Department Operations Manual, section 54100.20.3.

## V. Comments

The SOMS reflects the claimant met with Correctional Officer R. Aceves on April 28, 2023, regarding RVR, Log No. 7295122 (Disobeying an Order). Correctional Officer Aceves was listed as claimant 's SA. The Effective Communication document identified as "Inmate Served RVR Documents", dated April

28, 2023, indicates effective communication was established, which included claimant asking appropriate questions." The Effective Communication document identified as "Interview with SA", The April 29, 2023, CDCR Form 128B, referencing Log No. 7295122, reflects claimant refused to sign the form and was signed by Correctional Officer Vang not the assigned SA. If the incarcerated person does not want to attend the hearing, the SA shall speak with them before the start of the hearing and encourage them to attend. If they still decline to attend the hearing, the SA shall document their interaction and their use of EC during the interaction. The SA did not document nor was present during the time the claimant refused to sign the waiver to attend the disciplinary hearing, which is a due process violation.

## Decision: Granted

After a thorough review of all the documents and evidence presented to the Office of Grievances, it is the order of the Office of Grievances to GRANT this claim.

If you are dissatisfied with this response you may appeal this decision by mailing the CDCR Form 602-2 included in this response to the California Department of Corrections and Rehabilitation, Office of Appeals. Do not resubmit this claim to the Office of Grievances.

If more than 30 calendar days have passed since this decision was sent to you and the remedy, if any, has not yet been implemented, you may file a CDCR Form 602-3, Request to Implement Administrative Remedy. You must wait until after 30 calendar days have passed to submit this request.

| Staff Signature | Title | Date/Time |
|---|---|---|
| M. Dernoncourt [DEMA02 | Reviewing Authority | 12/13/2023 |

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| JAQUES OMAR FEARENCE-V51385 CMF, P.O. BOX-2500, VACAVILLE, CA 95696-2500 TELEPHONE NO.: N/A    FAX NO. *(Optional)*: N/A E-MAIL ADDRESS *(Optional)*: ATTORNEY FOR *(Name)*: IN PRO SE | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SOLANO
STREET ADDRESS: ~~580 TEXAS ST.~~
MAILING ADDRESS: 580 TEXAS ST.
CITY AND ZIP CODE: FAIRFIELD, CA 94533 .
BRANCH NAME: CIVIL DIVISION

| PLAINTIFF/PETITIONER: JAQUES O. FEARENCE S. NORMAN, M. ALVAREZ, F. CROSBY, T. VANG, DEFENDANT/RESPONDENT: CDCR AT EL, J. THURMON, A. SANES. | CASE NUMBER: CU24-06184 |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a. ☒ summons
   b. ☒ complaint/ TOM BANE CIVIL RIGHTS SUIT.
   c. ☐ Alternative Dispute Resolution (ADR) package
   d. ☒ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ cross-complaint
   f. ☒ other *(specify documents)*: EXEMPLARY DAMAGES AND INTENTIONAL TORT ATTACHMENTS.

3. a. Party served *(specify name of party as shown on documents served)*:


   b. ☐ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:

4. Address where the party was served:

5. I served the party *(check proper box)*
   a. ☐ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: (2) at *(time)*:
   b. ☐ **by substituted service.** On *(date)*: at *(time)*: I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

      (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*: from *(city)*: or ☐ a declaration of mailing is attached.

      (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                          (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** *(specify means of service and authorizing code section):*

  ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
  a. ☐ as an individual defendant.
  b. ☐ as the person sued under the fictitious name of *(specify):*
  c. ☐ as occupant.
  d. ☐ On behalf of *(specify):*
    under the following Code of Civil Procedure section:

    ☐ 416.10 (corporation)          ☐ 415.95 (business organization, form unknown)
    ☐ 416.20 (defunct corporation)     ☐ 416.60 (minor)
    ☐ 416.30 (joint stock company/association)  ☐ 416.70 (ward or conservatee)
    ☐ 416.40 (association or partnership)    ☐ 416.90 (authorized person)
    ☐ 416.50 (public entity)           ☐ 415.46 (occupant)
                            ☐ other:

7. **Person who served papers**
  a. Name:
  b. Address:
  c. Telephone number:
  d. **The fee for service was:** $
  e. I am:
    (1) ☐ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☐ a registered California process server:
      (i) ☐ owner ☐ employee ☐ independent contractor.
      (ii) Registration No.:
      (iii) County:

8. ☒ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

  or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date:

_____   ▶  _____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)           (SIGNATURE)

# CERTIFICATE OF SERVICE

Case Name: **Jaques O. Fearence (V51385)**    Case    **CU24-06184**
              **v. CDCR, et al.**             No.

I hereby certify that on <u>December 19, 2024</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

### NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(a) (FEDERAL QUESTION) AND REQUEST FOR SCREENING OF COMPLAINT UNDER 28 U.S.C. § 1915A

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

I further certify that some of the participants in the case are not registered CM/ECF users. On <u>December 19, 2024</u>, I have caused to be mailed in the Office of the Attorney General's internal mail system, the foregoing document(s) by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days to the following non-CM/ECF participants:

Jaques Omar Fearence, CDCR# V51385
High Desert State Prison
P.O. Box 3030
Susanville, CA 96127-3030
***In Pro Per***

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>December 19, 2024</u>, at Los Angeles, California.

| | |
|---|---|
| Esperanza Arroyo | *Esperanza Arroyo* |
| Declarant | Signature |

SA2024305512
67300502